UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

W.H., et al.,

              Plaintiffs,

    v.

OLYMPIA SCHOOL DISTRICT, et al.,

              Defendant.

CASE NO. C16-5273 BHS

ORDER GRANTING IN PART
AND DENYING IN PART
MOTION FOR SUMAMRY
JUDGMENT

     This matter comes before the Court on the motion for summary judgment of

Defendants Olympia School District (the "District"), Jennifer Priddy, Frederick Stanley,

Barbara Greer, William Lahmann, and Dominic Cvitanich (collectively "Defendants").

Dkt. 27. Also before the Court is Defendants' motion to file an overlength reply brief.

Dkt. 38. The Court has considered the pleadings filed in support of and in opposition to

the motion for summary judgment and the remainder of the file and hereby grants the

motion in part and denies it in part for the reasons stated herein.

# I.     PROCEDURAL HISTORY

On April 8, 2016, Plaintiffs W.H., P.H., J.H., B.M., and S.A. commenced this action. Dkt. 1. W.H. is the mother of minor Plaintiff P.H. *Id.* at 5–6. J.H. and B.M. are the father and mother of minor Plaintiff S.A. *Id.* at 6.

On June 23, 2017, Defendants moved for summary judgment. Dkt. 27. On July 17, 2017, Plaintiffs replied. Dkt. 36. On July 21, 2017, Defendants requested leave to file an overlength brief and filed their overlength reply. Dkt. 36. The Court had previously granted the parties leave to file an overlength motion and response. Dkts. 26, 35.

# II.     FACTUAL BACKGROUND[1]

In August of 2005, the District hired Gary Shafer, a 26-year-old man, as a bus driver. Dkt. 34-1 at 2. Over the course of his employment, Shafer sexually harassed and abused between twenty-five or thirty-five (although possibly as many as seventy-five) of the District's youngest bus passengers, including the minor Plaintiffs P.H. and S.A. Dkt. 34-2 at 76; Dkt. 34-5 at Dkt. 34-5 at 49–50.

There were numerous warning signs that the District failed to investigate or respond to when Shafer was a bus driver. For instance, Shafer was known for the peculiar and uncommon practice of frequently changing his bus routes. Dkt. 34-2 at 91, 93–94, 96, 100; Dkt. 34-6 at 561, 613–14. Also, Shafer would do "ride-alongs" on other drivers' routes at an unparalleled frequency, especially for a driver who was not a new employee.

---

[1] On summary judgment, the Court must construe the evidence and facts in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Therefore, the Court's summary of the factual background should not be interpreted as conclusive findings of fact, as the summary incorporates both stipulated and disputed facts in the light most favorable to Plaintiffs.

Dkt. 34-2 at 16–17, 49–50, 54–56; Dkt. 34-2 at 65. Ride-alongs are a practice where a District driver or employee spends unpaid time as an extra passenger on another driver's route.

Shafer used ride-alongs as an opportunity to target, groom, and even molest student passengers. Dkt. 34-2 at 16–17, 20, 50; *see also* Dkt. 34-6 at 527–28. The District's stated policy regarding ride-alongs was that they had to be authorized and such authorization was permitted only if the passenger had a legitimate educational purpose for the trip. Dkt. 34-1 at 133–34, 146; Dkt. 34-2 at 32. A policy of requiring that ride-alongs be authorized only pursuant to a legitimate purpose is in keeping with standard practices in the industry. *See* Dkt. 34-6 at 562–63. However, despite the District's stated policy, its actual established custom was to allow ride-alongs without requiring ride-along passengers or drivers to seek approval. Dkt. 34-1 at 133–34, 139. Even when approval was sought from a supervisor, particularly Defendant Stanley, it was uniformly given despite the absence of any legitimate purpose for the ride-along. *Id.*; Dkt. 34-2 at 107. Additionally, although another official policy stated that ride-along passengers were not supposed to sit with the children, the established custom in the District was to ignore this policy so long as the ride-along passenger was "trusted." Dkt. 34-3 at 39; Dkt. 34-6 at 535.

In the fall of 2007, a parent contacted the District to complain of strange and inappropriate behavior by Shafer. Dkt. 34-1 at 197–99. The parent complained that her son had reported Shafer regularly told him jokes, tickled him, and engaged in juvenile behaviors like making "fart sounds." *Id.* at 198. Most concerning, Shafer had even

slapped the child on the bottom on at least one occasion. *Id.* The parent also explained to the District that she had observed a strange behavior by Shafer, where he would pick up her child and one other boy at the first stop on the bus route and drive a short distance down the road, but then stop and park on the side of the street, even though the next bus stop was only another block away. *Id.* Also in the fall of 2007 a different parent contacted the District to complain of separate but similar inappropriate behavior by Shafer. Dkt. 34-3 at 62–64. This parent complained that his daughter had reported Shafer would regularly stop the bus mid route in order to play games of hide and seek with kindergarten children. *Id.* at 63. The parent also complained that during these games, Shafer would touch and tickle the children. *Id.* It appears that Defendants Greer and Stanley were the designated authorities to address such complaints. Dkt. 34-1 at 131, 203; Dkt. 34-2 at 10–14. However, Defendants have not presented any evidence regarding the manner in which these complaints were handled.

During the 2009–2010 school year, another parent contacted the District with a complaint that his daughter's bus had arrived significantly late at their home, which is the last stop on the route. Dkt. 34-2 at 7–8. The parent explained to the District that his daughter seemed particularly distraught, had stated that she no longer wanted to ride the bus, but was refusing to say what had happened. *Id.*; Dkt. 34-1 at 206. Although he reported this to Defendant Greer and insisted that something upsetting must have happened on the bus, there was never any investigation or follow up by the District. Dkt. 34-2 at 12–13; Dkt. 34-1 at 206.

In December of 2010 and January of 2011 reports were made to the Thurston County Sheriff's Office that Shafer had molested two children on a school bus and a police investigation promptly ensued. Dkt. 34-3 at 76. On January 28, 2011, Shafer surrendered himself to police and confessed to molesting multiple children on the District's buses. Dkt. 34-3 at 94.

During a subsequent psychological evaluation in 2011, Plaintiff admitted to molesting between twenty-five to thirty-five children on the District's school buses. Dkt. 34-5 at 49–50. Shafer listed the first names of minor Plaintiffs S.A. and P.H. among his victims and indicated that they had been abused during the 2008–2009 school year. *Id.* at 42, 50. On May 10, 2011, the detective investigating the case against Shafer met with District officials, including Defendants Lahmann and Priddy, to request Defendants' help in identifying and contacting S.A. and P.H. Dkt. 34-6 at 11, 43–45. In turn, Priddy enlisted Defendant Stanley to help identify the minor Plaintiffs. *Id.* at 55–56. Shortly thereafter, Defendant Stanley provided Defendant Priddy with all the necessary information to locate and contact P.H. and S.A. *Id.* at 55–56.

Although the District possessed all the information necessary to identify P.H. and S.A. in 2011, it failed to contact P.H. or S.A. until 2012 and 2013, respectively. Dkt. 34-6 at 45, 85. However, it was not until 2015 that Priddy contacted P.H.'s family to inform them that Shafer had indeed molested P.H. *Id.* at 614. When Priddy contacted P.H.'s family in 2012, she actually told P.H.'s parents that she did not believe that anything had happened to P.H. *Id.* at 85–87. In making this assertion, Priddy minimized the fact that P.H.'s first name corresponded to one of Shafer's named victims by claiming she did not

believe that Shafer was ever working on P.H.'s bus route. *Id.* However, Shafer had

indeed worked on P.H.'s route and this fact had been identified by Stanley and forwarded

to Priddy in 2011. *Id.* at 55–56. The District's delay in identifying and contacting S.A.

and her family was the result of the District finding two applicable files for children with

the same first name provided by Shafer, S.A. and S.L., and the District could not

determine which of the two children Shafer had abused. *See id.* at 46. However, it

appears that the District made only a minimal effort to review the files or contact the

families of those children—if they tried at all—because even though the files were not

linked in the District's database, they actually both pertained to the same child, S.A. *Id.* at

46–47.

### III.    DISCUSSION

Defendants move for summary judgment on Plaintiffs' federal claims under Title

IX and 42 U.S.C. § 1983. Defendants further request that the Court decline to further

exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C.

§ 1367. Plaintiffs oppose these motions. Dkt. 33. Additionally, Defendants request that

the Court accept their overlength reply brief. Dkts. 37, 38. Plaintiffs have not objected to

this request.

**A.    Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party is entitled to judgment as a matter of law when the nonmoving party

fails to make a sufficient showing on an essential element of a claim in the case on which

the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). There is no genuine issue of fact for trial where the record, taken as a whole,

could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

present specific, significant probative evidence, not simply "some metaphysical doubt").

*See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if

there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc*., 477

U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

626, 630 (9th Cir. 1987). The Court must construe any factual issues of controversy in

favor of the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

**B.     Title IX**

The District moves for summary judgment on Plaintiffs' Title IX claims, arguing

that Plaintiffs cannot show that the District possessed "actual knowledge" of the

underlying misconduct. Dkt. 27 at 12–17. The Court finds otherwise.

Title IX provides that "[n]o person in the United States shall, on the basis of sex,

be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any education program or activity receiving Federal financial

assistance[.]" 20 U.S.C. § 1681(a). The Supreme Court has recognized an implied private

right of action for damages under this provision. *Davis Next Friend LaShonda D. v.*

*Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 639 (1999). However, damages are available in

such an action only where "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has *actual knowledge* of the discrimination in the recipient's programs and fails to adequately respond." *Gebser v. Lago Independent School Dist.*, 524 U.S. 274, 283 (1998) (emphasis added). "In sexual harassment cases, it is the deliberate failure to curtail *known harassment*, rather than the harassment itself, that constitutes the intentional Title IX violation." *Mansourian v. Regents of Univ. of California*, 602 F.3d 957, 967 (9th Cir. 2010) (emphasis added).

Frustrating, however, is the Supreme Court's language in *Gebser* stating that a Title IX claim falls short where school officials receive a complaint "that was plainly insufficient to alert [them] *to the possibility* that [an employee] was involved in a sexual relationship with a student." *Gebser*, 524 U.S. at 291 (emphasis added). The use of the term "possibility" creates ambiguity regarding what exactly it is that schools must have "actual knowledge" about. Other district courts have grasped onto this language and concluded that a viable Title IX claim arises where appropriate school officials receive complaints that alert them to a "substantial risk" of sexual harassment or abuse. *See Campbell v. Dundee Cmty. Sch.*, 12-CV-12327, 2015 WL 4040743, at *5 (E.D. Mich. July 1, 2015), *aff'd*, 661 Fed. Appx. 884 (6th Cir. 2016) (finding the applicable standard "requires actual knowledge that there is a substantial risk of abuse that would give rise to liability under Title IX"); *Doe A. v. Green*, 298 F. Supp. 2d 1025, 1033 (D. Nev. 2004); *Johnson v. Galen Health Institutes, Inc.*, 267 F.Supp.2d 679, 688 (W.D. Ky. 2003) ("[T]he actual notice standard is met when an appropriate official has actual knowledge

of a substantial risk of abuse to students based on prior complaints by other students."); *Massey v. Akron City Board of Educ.*, 82 F. Supp. 2d 735, 744 (N.D. Ohio 2000) ("For actual notice to exist, an agent of the school must be aware of facts that indicate a likelihood of discrimination."); *Gordon v. Ottumwa Cmty. School Dist.*, 115 F. Supp. 2d 1077, 1082 (S.D. Iowa 2000) (finding that the actual notice standard "does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student. At some point . . . a supervisory school official knows . . . that a school employee is a substantial risk to sexually abuse children."). Some circuit panels have agreed. *See, e.g.*, *Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1259 (11th Cir. 2010) (citing and applying substantial risk standard); *Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 368 (6th Cir. 2005) (affirming jury instruction that Title IX claim satisfied where "school district was deliberately indifferent to a substantial risk of sexual abuse posed to the children of the school district.").

It is important, however, to recognize that the *Gebser* opinion never actually stated that evidence alerting school officials to the *possibility* of sexual abuse would satisfy the "actual knowledge" requirement. Instead, the Supreme Court ruled that the absence of such evidence showed that the "actual knowledge" requirement was not satisfied. Accordingly, the Court sees it as reasonable that the Fourth Circuit, in contrast to the above cited decisions, has rejected a Title IX claim on the basis that, "[a]lthough [a school official] certainly should have been aware of the *potential* for such abuse, and for this reason was properly held liable under § 1983, there is no evidence in the record to

support a conclusion that [the official] was *in fact* aware that a student was being abused." *Baynard v. Malone*, 268 F.3d 228, 238 (4th Cir. 2001) (emphasis in original).

The most recent Supreme Court instruction on the "actual knowledge" requirement was given in *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 642 (1999). In that case, the Supreme Court characterized its *Gebser* opinion as having held that "a recipient of federal education funds may be liable in damages under Title IX where it is deliberately indifferent to known acts of sexual harassment by a teacher." *Davis*, 526 U.S. at 641. Similar to the Supreme Court's "known acts" language is the Ninth Circuit's explanation that in cases involving sexual abuse, Title IX liability is predicated on the "failure to curtail known harassment, rather than the harassment itself . . . " *Mansourian*, 602 F.3d at 967. Other than this, the Court is unaware of any further Supreme Court or the Ninth Circuit precedent offering guidance in resolving the ambiguity of Title IX's "actual knowledge" requirement as established in *Gebser*.

In the Court's own experience applying Title IX, it recently engaged in a similar review of non-binding precedent from other district courts regarding when the issue of "actual knowledge" becomes a genuine disputed fact to be resolved at trial. *J.J. v. Olympia Sch. Dist.*, C16-5060 BHS, 2017 WL 347397, *5–*6 (W.D. Wash. Jan. 24, 2017). Reviewing two published district court cases in particular, the Court recognized a trending principle that a "triable issue of fact arises [as to actual knowledge] when a school official is confronted with known acts that could objectively be characterized as sexually motivated, but the official does not view those acts as sexual harassment." *Id.* at

*6 (citing *Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008, 1032 (E.D. Cal. 2009); *Brodeur v. Claremont Sch. Dist.*, 626 F. Supp. 2d 195, 211–12 (D.N.H. 2009)). The Court finds this standard to be helpful, as it embraces an objective viewpoint and is tailored to match *Davis*'s standard that an appropriate school official must be "deliberately indifferent to known acts of sexual harassment by a teacher" for a Title IX claim to arise. *Davis*, 526 U.S. at 641. Moreover, this principle allows the Court to reach a decision in this case without concluding whether it will adopt or decline the theory that Title IX of liability is predicated on actual knowledge of a "substantial risk" of sexual harassment. Relying on this principle, the Court denies the District's motion for summary judgment on the Title IX claims: Plaintiffs have presented sufficient evidence to create a triable issue of fact regarding whether the District's officials had actual knowledge that behavior was occurring on its buses that, viewed objectively, could reasonably be interpreted to constitute sexual harassment.

Washington State has provided valuable guidance in defining what constitutes an act of sexual harassment under state law. In 2005, the Washington legislature authorized and required the Professional Educator Standards Board to establish rules defining "verbal abuse," "physical abuse," and "sexual misconduct" as used in the "information on past sexual misconduct" and "mandatory disclosure" requirements found in Washington's "common school provisions." RCW 28A.400.301 (referring to Board of Education); *see also* SB 5732 (2005) (transferring authority to Professional Educator Standards Board); WSR 06-02-051. Effective as of 2006, the Board defined the term "sexual misconduct" as it applied to the regulation of school employees' conduct to

include "[a]ny activities determined to be grooming behavior for purposes of establishing a sexual relationship." WAC 181-88-060(1)(d).

With this regulation already in place, the District received two reports in 2007 describing behavior by Shafer that constituted "sexual misconduct" under the grooming provision, including a report that Shafer would stop the bus mid-route to play hide-and-seek games during which he would touch and tickle passengers (Dkt. 34-3 at 63), as well as another report that Shaffer would regularly tickle a particular student and had slapped him on his rear end (Dkt. 34-1 at 198). Additionally, Plaintiffs provide evidence to suggest that the District was placed on notice of numerous "red flag" behaviors by Shafer, such as the unparalleled frequency of his route changes and "ride-alongs," and complaints about the delays to his route and extended stops he would make when only one or two students were alone with him on the bus (*see* Dkt. 34-1 at 198, 206; Dkt. 34-2 at 80).

It is important to note that Plaintiffs' evidence regarding "red flag" behaviors, such as the frequent route changes, ride-alongs, and suspicious delays or stops are insufficient on their own create a genuine dispute as to whether the District had actual knowledge of sexual harassment taking pace on its buses. While these "red flags," in aggregate, arguably *should* have placed Defendants on notice that Shafer posed a risk to young bus passengers, relying on "red flags" alone amounts to an argument that Defendants had constructive notice of sexual abuse. Such an argument may be appropriate in the context of negligence claims, or even some § 1983 claims, but the Supreme Court has expressly rejected such an argument in the context of Title IX.

*Gebser*, 524 U.S. at 282 (rejecting argument "that a school district should at a minimum be liable for damages based on a theory of constructive notice, *i.e.*, where the district knew or "should have known" about harassment but failed to uncover and eliminate it.").

In this case, however, the "red flags" cited by Plaintiffs were accompanied by the two separate reports, actually received by the District, complaining that Shafer was irregularly stopping his bus and touching children passengers in ways consistent with commonly identified sexual grooming techniques. In light of these 2007 reports, although the District may not have subjectively viewed the complained-of conduct as sexually motivated, the District nonetheless had actual knowledge of grooming occurring on their buses that qualified as "sexual misconduct" under applicable state regulations specifically implemented for the administration of school employees.

Perhaps the District could still escape liability under Title IX by showing that they adequately responded to those reports by confronting or putting an end to Shafer's grooming behaviors. However, no such argument has been presented, and the abundant evidence that such behavior continued on his own routes and ride-alongs make such an argument seem unlikely. Where the District has failed to provide any argument on the adequacy of their response to the reported incidents of grooming, the Court must conclude that reasonable minds could differ on whether the District responded in deliberate indifference to multiple known acts of "sexual misconduct," ultimately resulting in the alleged sexual abuse of the minor plaintiffs. The District's motion for summary judgment on Plaintiffs' Title IX claims is denied.

**C.      42 U.S.C. § 1983**

Defendants jointly argue that they are entitled to summary judgment on Plaintiffs' § 1983 claims, advancing three grounds for the dismissal of those claims. First, Defendants argue that Plaintiffs' claims are barred by "[t]he general rule announced in *DeShaney* that members of the public have no constitutional right to sue state actors who fail to protect them from harm inflicted by third parties." *Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007) (citing *DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189 (1989)). Second, the individual Defendants argue that they are entitled to qualified immunity on Plaintiffs' § 1983 claims because the alleged misconduct does not violate clearly established law. Third, the District argues that Plaintiffs cannot satisfy the legal standard set forth in *Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658 (1978), to show that it is liable for the alleged constitutional violations committed by its employees.

**1.      The *Deshaney* Rule**

Defendants argue that Plaintiffs' claims are barred by the *Deshaney* rule, under which § 1983 liability is precluded for the torts of private actors unless a plaintiff can establish that the abuse grew out of a "state created danger" or that the government Defendant had a "special relationship" with the plaintiff. *See Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007). The Court rejects this argument because Shafer was not a private actor when he sexually abused the minor Plaintiffs.

The *DeShaney* rule applies when assessing whether a state actor has a constitutional duty to protect members of the public from *private actors*. *DeShaney v.*

*Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by *private actors*.") (emphasis added). However, this case deals with sexual abuse by Shafer, a state actor acting under color of state law in his role as a bus driver for the District when he violated the minor Plaintiffs' due process right to bodily integrity. *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 n. 4 (5th Cir. 1994), *cert. denied*, 513 U.S. 815 (explaining that where a "'real nexus exists between the activity out of which the violation occurs and the teacher's duties and obligations, then the teacher's conduct is taken under color of state law."). *See also Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (citing *Taylor Indep. Sch. Dist.*, 15 F.3d at 451) ("[T]he Constitution protects a child's right to be free from sexual abuse by school employees while attending public school."). Defendants do not dispute that Shafer was acting under color of state law when he abused the minor Plaintiffs.

Whether Defendants may be liable for Shafer's actions due to their own alleged deliberate indifference towards Plaintiffs' safety is a question that falls outside the strictures of *Deshaney* and, instead, is an issue to be assessed in a legal framework relating to supervisory liability for constitutional violations by state actors. Accordingly, the Court need not address whether Shafer's abuse of the minor Plaintiffs grew out of a "state created danger" or "special relationship."

## 2. Qualified Immunity

The individual Defendants next argue that they are entitled to qualified immunity on Plaintiffs' § 1983 claims. "Government officials performing discretionary functions enjoy qualified immunity from civil damages so long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1314 (9th Cir. 1989) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Under qualified immunity, a public official is protected from suit when he or she "makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Plaintiffs bear the burden of demonstrating that the right which Defendants allegedly violated was clearly established at the time of the alleged misconduct. *See Davis v. Scherer*, 468 U.S. 183, 197 (1984).

The individual Defendants argue that they are entitled to qualified immunity because the theories of liability advanced by Plaintiffs are not premised on a violation of clearly established constitutional rights. Dkt. 27 at 30–33. Plaintiffs appear to raise two separate theories of liability for the individual Defendants. First, they argue that the individual Defendants deprived the minor Plaintiffs of the opportunity to seek timely medical treatment for any psychological trauma that may stem from their abuse. Specifically, they argue that the individual Defendants "interfered with the minor Plaintiffs' treatment by withholding information that would have identified them as abuse

victims, interference that was done to reduce the number of claimants and to avoid further civil liability." Dkt. 33 at 43. Second, Plaintiffs argue that the individual Defendants were responsible for customs and policies that were a moving force behind the minor Plaintiffs' abuse, including inadequate supervision and failure to train district bus drivers.

### a. Failure to Report Abuse as an Allegedly Unconstitutional Interference with Medical Treatment

While Plaintiffs argue that they have a right to be free from government interference with the minor Plaintiffs' medical care, the cases they cite for this proposition deal with the rights of inmates under the Eighth Amendment to be free from an unnecessary and wanton infliction of pain when subject to the complete control and custody of the state. *See* Dkt. 33 at 55 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). *See also* Dkt. 33 at 43 (collecting cases). These cases do not show that Plaintiffs had a clearly established right under the Fourteenth Amendment to have school officials report the abuse of the minor Plaintiffs (who were not in the custody of the state) in order to put them on notice of the potential need for psychiatric treatment. Therefore, to the extent that Plaintiffs argue that Defendants violated a clearly established right of the minor Plaintiffs by depriving them of necessary medical attention, the Court grants Defendants' motion for summary judgment.

Additionally, to the extent that the adult Plaintiffs may argue that the failure to report the abuse resulted in interference with their rights as parents to seek medical attention for their children, Plaintiffs have failed to identify any precedent that clearly

establishes that an official's failure to inform parents of an investigation into the potential

molestation of their child constitutes a violation of the parents' right to participate in the

care and management of their child. As recently as 2010, the Ninth Circuit stated, "we are

aware of no case with even loosely analogous facts that might suggest that officials

investigating allegations of child abuse have a constitutional duty to inform the alleged

victim's parents." *James v. Rowlands*, 606 F.3d 646, 652 (9th Cir. 2010). Accordingly, to

the extent the parent Plaintiffs claim that the Defendants deprived them of their right to

participate in the care and management of their children, the individual Defendants are

necessarily entitled to qualified immunity on those claims as well.

### b. Individual Defendants' Deliberate Indifference in a Supervisory Role as a Proximate Cause of a Due Process Violation

While Plaintiffs have failed to show a violation of a clearly established right in

reference to their right to seek medical treatment for injuries, there is precedent

establishing that the failure to report abuse in conformance with statutory requirements

can constitute the execution of an unconstitutional policy, practice, or custom of

deliberate indifference towards children's right to bodily integrity. *See e.g., Doe v. New

York City Dep't of Soc. Servs.*, 649 F.2d 134, 146 (2d Cir. 1981) (stating that failure to

comply with reporting duties is "evidence of an overall posture of deliberate indifference

toward [a child]'s welfare."). However, this same precedent indicates that, on its own, a

failure to report abuse only constitutes an unconstitutional action if it proximately causes

the constitutional deprivation. *Id.* ("[T]he failure to report *was itself a proximate cause of

[a] continuing injury* and could be the basis for liability if the agency's failure was the

result of its being deliberately unconcerned about whether it complied with that duty, since reporting would have led to an investigation by the Department's confidential investigations unit which might well have discovered the abuse *and put an end to it . . . .*") (emphasis added). Therefore, established law on the nexus between a state's mandatory reporting statutes and any resulting constitutional duties indicates that, on its own, an official's failure to report sexual abuse can constitute a constitutional violation only if complying with the reporting duties likely could have ended the abuse.

Plaintiffs' § 1983 claims against Defendant Cvitanich are based entirely on his alleged failure to "disclos[e] the critical facts to law enforcement or the parents of these children who they knew were abuse victims" after Shafer had already been arrested and the abuse had ceased. Dkt. 1 at 28. Indeed, Cvitanich was only hired by the District in 2012. *Id.* at 7. Accordingly, Cvitanich is entitled to summary judgment on Plaintiffs' § 1983 claims against him because he was not in a position to report the abuse at a time when a proper report could have put an end to it. Additionally, to the extent that Plaintiffs claim that the remaining individual Defendants are liable under § 1983 based solely on their failure to report the specific abuse against the minor Plaintiffs after it had already been put to an end, these claims must also fail for the same reason.

Nonetheless, there is evidence that Defendants Stanley and Greer received complaints of sexual harassment and inappropriate conduct by Shafer as early as 2007 that, had they been properly investigated and reported, could have prevented the abuse of the minor Plaintiffs. Specifically, there is evidence that the remaining Defendants failed to adequately report complaints in 2007 that Shafer would stop the bus mid-route to play

with, touch, and tickle young passengers and that Shafer would regularly tickle a particular student that he had slapped on the rear end at least on one occasion. Dkt. 34-1 at 198; Dkt. 34-3 at 63. It is unclear whether the failure to report these incidents violated the Defendants' statutory reporting duties, and the parties do not address the issue. Nonetheless, at this stage, it appears that a jury could reasonably conclude that properly reporting and investigating these complaints would have prevented any future abuse, including the abuse of Plaintiffs that appears to have occurred in 2008 and 2009. Accordingly Stanley and Greer are not entitled to qualified immunity on Plaintiffs' § 1983 claims under this theory.

Even if a failure to report the 2007 complaints would not by itself constitute a moving force behind the minor Plaintiffs' constitutional deprivation, it is still part of a larger body of evidence suggesting that the individual Defendants (except Cvitanich) implemented an unconstitutional custom or practice of deliberately failing to investigate and report complaints and instances of bus driver conduct that was indicative that young bus passengers were at risk of physical and sexual abuse. It has long been established that "[a] supervisor may be liable [under § 1983] if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). *See also Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (quoting *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005)) ("We have held that 'acquiescence or culpable indifference' may suffice to show that a supervisor 'personally played a role in the alleged constitutional violations.'"). Likewise,

the Ninth Circuit has long recognized that "the Constitution protects a child's right to be free from sexual abuse by school employees while attending public school." *See also Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (citing *Taylor Indep. Sch. Dist.*, 15 F.3d at 451). Accordingly, Plaintiffs can overcome the individual Defendants' assertion of qualified immunity if they can show that the individual Defendants "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)). Such an unconstitutional policy can include a failure to supervise, monitor, or train employees "where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

Plaintiffs have presented evidence to suggest that the individual Defendants implemented a policy of deliberately turning a blind eye to evidence of sexual harassment and possible abuse occurring on its buses. As stated above, two complaints were made to the District in 2007 describing inappropriate behavior by Shafer that a jury could reasonably find was highly indicative of a risk of sexual abuse. Dkt. 34-1 at 198; Dkt. 34-3 at 63. Defendants neither refute these complaints nor describe a reasonable way in which the complaints were handled. Instead, they attempt to minimize the reports by arguing that "[e]ven if the court accepts these statements as true, they do not establish actual knowledge." Dkt. 36 at 6. For the purposes of summary judgment, the Court must accept these statements as true. Contrary to Defendants' assertions, the Court has also

already described how the information in the complaints could have provided Defendants with actual knowledge of sexual harassment that needed to be further investigated. Moreover, unlike claims under Title IX, claims under § 1983 do not require that the defendants have actual knowledge of the harm that students are suffering. Rather, deliberate indifference under § 1983 is established when, by failing to train or supervise employees, "a municipal actor disregarded a known *or obvious* consequence of his action." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1079 (9th Cir. 2016), *cert. denied sub nom. Los Angeles Cty., Cal. v. Castro*, 137 S. Ct. 831 (2017) (emphasis added).

In addition to the reports in 2007, Plaintiffs provide evidence to suggest that Defendants were placed on notice of many other "red flag" behaviors of Shafer, including the high frequency of his route changes and "ride-alongs," as well as complaints about delays and seemingly unnecessary stops he would make when only one or two students were present on the bus. Dkt. 34-1 at 198, 206; Dkt. 34-2 at 80. These complaints and "red flags" were accompanied by a custom of ignoring stated policies that were intended to keep children safe on the buses. For instance, despite an official rule that adults present on ride-alongs were not supposed to sit with children, this official policy was ignored and not enforced. Dkt. 34-3 at 39; Dkt. 34-6 at 535. Similarly, despite a general rule that drivers were supposed to get supervisor authorization to do ride-alongs, this rule was not enforced. Dkt. 34-1 at 133–34, 139. Moreover, in the rare instance when approval was sought, it was unvaryingly given by Defendant Stanley regardless of the absence of any legitimate purpose for the ride-along. *Id.*; Dkt. 34-2 at 107. This established custom of

blanket approval for ride-alongs violated yet another official policy that bus drivers were not supposed to go on ride-alongs without an educational purpose. *Id.* at 146.

Other circumstantial evidence further supports a theory that Defendants employed a custom of turning a blind eye towards the safety and welfare of the District's young bus passengers. One such piece evidence includes a comparison between the varying cultures of the District's transportation department when under the supervision of either Stanley or his predecessor. While Stanley's predecessor was known for confronting his employees' misconduct, it was stated of Stanley's tenure that "[Stanley] doesn't deal with problems. . . . He says, 'Don't rock the boat.'" Dkt. 34-6 at 605. Another piece of circumstantial evidence of such a relaxed and unconcerned posture towards the inappropriate conduct of District employees and the welfare of its students is the fact that after Defendants Lahmann, Priddy, and Stanley were tasked with identifying Shafer's victims, Priddy initially attempted to minimize or conceal S.A.'s abuse when speaking to the parents. *See* Dkt. 34-6 at 87. Moreover, despite possessing all the necessary information to identify and contact Defendant S.A. in 2011, *id.* at 31, 47, it appears that the District's officials may have failed to comply with mandatory reporting statutes and properly report the abuse of Plaintiff S.A. to law enforcement until August 23, 2013. *See id.* at 74–76. Similarly, P.H.'s family wasn't informed of her abuse until 2015. Dkt. 34-6 at 614. Although the District's failure to report or disclose the abuse of P.H. and S.A. occurred after their injuries had already been inflicted (and therefore could not have been a cause of the injury) other courts have recognized that a failure to comply with statutory

reporting duties is nonetheless "evidence of an overall posture of deliberate indifference toward [a child]'s welfare." *New York City Dep't of Soc. Servs.*, 649 F.2d at 146.

Defendants argue that "as soon as the district had knowledge of Shafer's misconduct the district reported him to the police and fired him." Dkt. 27 at 28. However, the reference to Shafer's "misconduct" in this statement is misleading. Indeed, Defendants Lahmann, Priddy, and Shafer helped identify victims when approached by the police and fired Shafer when they had an ironclad knowledge that Shafer was sexually abusing passengers. However, that does not mean that Defendants were not deliberately indifferent to Shafer's general "misconduct," including inappropriate physical contact with children, that was reported as early as 2007. Moreover, while Shafer was reported to the police, Plaintiffs have presented evidence to show that Defendants were derelict in a duty to investigate and report the identities of P.H. and S.A. as the specific victims that Shafer had identified only by first name.

In light of the 2007 reports of Shafer touching and tickling students on the bus, in combination with the numerous other "red flags" and Defendants' seemingly inadequate response in investigating and reporting the abuse of P.H. and S.A., there are triable issues of fact as to (1) whether Defendants failed to supervise Shafer, train their employees, or otherwise instituted dangerous established customs in deliberate indifference towards the rights of Plaintiffs, and (2) whether such failures were a moving force behind Plaintiffs' injuries.

### 3. *Monell* Liability

The District also moves for summary judgment claiming that Plaintiffs cannot prove the existence of a policy, custom, or practice that was the moving force behind the deprivation of the minor Plaintiffs' constitutional rights. "While local governments may be sued under § 1983, they cannot be held vicariously liable for their employees' constitutional violations." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013). To state a claim against a municipality under § 1983, a plaintiff must allege sufficient facts to support a reasonable inference that the execution of a policy, custom, or practice was the "moving force" that resulted in the deprivation of his constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978).

There are three established scenarios in which a municipality may be liable for constitutional violations under § 1983. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2012), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (quoting *Monell*, 436 U.S. at 708). "First, a local government may be held liable 'when implementation of its official policies or established customs inflicts the constitutional injury.'" *Id.* Second, a plaintiff can prevail on a § 1983 claim against a municipality by identifying acts of omission, such as a pervasive failure to train its employees, "when such omissions amount to the local government's own official policy." *Id.* And finally, the District "may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* at 1250 (quoting *Gillette v.*

*Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (internal quotation marks and citations omitted)).

As discussed above, Plaintiffs have presented sufficient evidence to support all three theories. To support the first theory, Plaintiffs have presented evidence that the District had an established custom of deliberately turning a blind eye towards complaints and other evidence that was highly indicative of a risk that sexual abuse was occurring on its buses. To support the second theory, Plaintiffs have presented evidence that, (1) despite official guidelines designed to protect children on buses, the District condoned a pervasive failure among its drivers to adhere to these guidelines, and (2) a known or obvious risk of ignoring these guidelines was that children such as Plaintiffs would suffer violations of their right to bodily integrity. To support the third theory, Plaintiffs have presented evidence that several red flags of sexual grooming and abuse were deliberately ignored by an official policy maker for the transportation department, namely Defendant Stanley, and that this deliberate indifference proximately caused Plaintiffs' injuries. Because the Court has already discussed the evidence supporting these theories in the context of the individual Defendants' supervisory liability, it need not repeat its analysis here. Accordingly, Plaintiffs have presented a genuine dispute of fact as to whether the District may be liable under § 1983 for Shafer's violation of Plaintiffs' constitutional rights, and the Court must deny the District's motion.

**D.      Housekeeping**

Defendants have also moved to dismiss Plaintiffs' state law claims for lack of supplemental jurisdiction. This request was contingent upon the Court granting their

motion for summary judgment on Plaintiffs' federal claims. Because the Court has concluded that Plaintiffs' federal claims survive summary judgment, the Court denies Defendants' request to dismiss Plaintiffs' state law claims for lack of jurisdiction.

Defendants have also requested leave to file an overlength reply brief. Plaintiffs do not oppose this motion. Accordingly, the motion is granted.

## IV.   ORDER

Therefore, it is hereby **ORDERED** as follows:

(1)   Defendants' motion for summary judgment (Dkt. 27) is **GRANTED in part** and Plaintiffs' § 1983 claims against Defendant Cvitanich are **DISMISSED**;

(2)   Defendants' motion for summary judgment is **DENIED in part** as to Plaintiffs' Title IX claim against the District and their § 1983 claims against the remaining Defendants, and;

(3)   Defendants' motion to file an overlength reply is **GRANTED**.

Dated this 18th day of August, 2017.

_____
BENJAMIN H. SETTLE
United States District Judge