DARRELL L. COCHRAN
(darrell@pcvalaw.com)
KEVIN M. HASTINGS
(kevin@pcvalaw.com)
Pfau Cochran Vertetis Amala PLLC
911 Pacific Ave., Ste. 200
Tacoma, WA 98402
Tel: (253) 777-0799

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| W.H., as guardian for her minor daughter, P.H.; W.H., individually; J.H., individually; B.M., as guardian for her minor daughter, S.A.; and B.M., individually, | NO. 3:16-cv-5273 |
| Plaintiffs, | FIRST AMENDED COMPLAINT FOR DAMAGES |
| vs. | Demand for Jury Trial |
| OLYMPIA SCHOOL DISTRICT, a public corporation; FREDERICK DAVID STANLEY, individually; BARBARA GREER, individually, | |
| Defendants. | |

COMES NOW Plaintiffs, by and through their attorneys Darrell L. Cochran and Kevin M. Hastings, and the law firm of Pfau Cochran Vertetis Amala PLLC, to bring a cause of action against the defendants, and allege the following:



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

# I.    INTRODUCTION

1.      In August of 2005, the Olympia School District (the "District") hired a man named Gary Shafer to be a new bus driver.  He was 26 years old, unmarried, no children, and no experience in bus driving, but he proclaimed his "love of children" as a sound basis for his employment.  The District Transportation Director at the time, Fred Stanley, conducted an interview of less than thirty minutes, made no reference checks, made no checks with past employers, made no initial criminal checks but hired him nonetheless.

2.      The position of bus driver in the District calls for a bus driver to spend hours alone with the school children, including many children who are a young as four and in their formative years of communicating thoughts and events.  Shafer is now in prison for molesting school girls who were the youngest and most vulnerable at the District.  Shafer has admitted to sexually molesting at least 30 District children and will neither "admit nor deny" his victim count could be 75 children or more.

3.      Between 2005 and 2011, the District knowingly allowed its employee Gary Shafer to climb aboard hundreds of midday bus routes for pre-kindergarten, kindergarten, ad special needs children in the district, and then "ride along" with girl passengers. As another district driver drove the school bus, Shafer was allowed to ride along on buses that transported the Districts most vulnerable students. The District has repeatedly confirmed that it never had a reason to distrust a bus driver's motivation for devoting unusual attention to small girls on buses and did not care why Shafer wanted to ride along with the girls on those buses.

4.      The District had no legitimate purpose for allowing Shafer to ride along and sit with these vulnerable girls: They did not pay Shafer to carry out work assignments on the buses, they did not assign any tasks for which he could legitimately volunteered, they did not track the

FIRST AMENDED COMPLAINT FOR DAMAGES



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

times, dates or buses in which he rode along, nor did they ever question Shafer or the drivers about what Shafer had been doing on the buses with these young girls. Shafer was an unmarried, twenty-six year old man without children of his own who started spending all of his free time riding along on school buses without pay so he could interact with four and five year old girls, including special needs students with learning or speech delays.

5.      The District and its administrators were deliberately indifferent in their disregard for what Shafer was doing with the girls on the buses. The District knowingly allowed Shafer unfettered access to identify helpless girls, then to groom and sexually molest kindergarten, pre-kindergarten, and special needs children while they were riding to and from school on the midday bus. A number of bus drivers in the District knew Shafer was sitting with the young girls, giggling with the girls, tickling the girls, and violating long standing industry and common sense codes of conduct for bus drivers and small girls on buses.

6.      The District and its administrators decided against putting in place policies and procedures to ensure that only those assigned to drive the bus were on the bus, which directly caused an unreasonable danger of Shafer. Compounding the matter, the former Transportation Director Fred Stanley and Former Transportation Training Coordinator Barbara Greer knowingly allowed Shafer to ride along on whatever bus he wanted, regardless of whether he had an educational purpose to be there. Stanley and Greer ignored challenges to whether Shafer should be riding along on the buses and also ignored concerns that Shafer had begun changing his own bus routes at an alarming pace, alarming for the potential Shafer was changing routes because of confrontation with students he had been grooming and molesting on his own assigned routes.

FIRST AMENDED COMPLAINT FOR DAMAGES

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

7.      The District's acts and omissions demonstrate a deliberate indifference to the rights of the children riding on those school buses. At the time of Shafer's employ, the District knew based on longstanding literature that child molestation was a major threat to students. By March 17, 2010, the District was even given a presentation by its risk management company, Canfield, showing that bus drivers constituted 12 percent of the total number of sexual assaulters within the school context – a shocking number given the relatively small number of bus drivers compared to teachers and administrators.

8.      The District and its administrators ignored the literature and statistics that children, particularly on buses, were at risk of being sexually abused. The District and its administrators also ignored glaring red flags that Shafer was harming children, including, notice from a concerned parent that a bus being driven by Shafer was over 30 minutes late and his daughter came home refusing to ride the bus; notice from drivers that Shafer would pullover his bus for no reason during the middle of routes; notice that he would sit on buses with children in his lap; notice that he was constantly changing bus routes; and notice that he was watching pornography in the breakroom. The District's misconduct as alleged in this complaint was done in deliberate indifference to the safety and well-being of children.

9.      In December 2010, a kindergarten girl disclosed to her mother that "Gary," the man who rode along with her regular driver, Mario Paz, sexually assaulted her. A police investigation confirmed that Gary was Olympia School District bus driver, Gary Shafer. The police investigation lead to another victim and by January 19, 2011, Shafer had both confessed to sexually assaulting young girls on buses and resigned from the District. Shafer was arrested on two counts of child molestation on January 27, 2011. Gary Shafer decided that he wanted to seek a special first time offender sentence and submitted to a psychological evaluation in March

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

2011. After failing multiple polygraph examinations, Shafer admitted during the course of his psychosexual evaluation that he had sexually molested dozens of young girls in the Olympia School District while either riding along on or driving their buses. Shafer gave some descriptions of girls and even some distinctive names.

10.     Thurston County Sheriff's Detective Cheryl Stines met with Olympia School District administrators, including Superintendent William Lahmann and Assistant Superintendent Jennifer Priddy to advise the District about the confessions by Shafer and to provide specific information from the polygraph admissions. Detective Stines had already made specific and separate arrangements to interview a young kindergarten girl from Garfield Elementary School and Superintendent Lahmann and Assistant Superintendent Priddy asked to speak with Detective Stines as a result.

11.     Despite receiving information about the high number of young and vulnerable school district girls molested by Shafer, Superintendent Lahmann and Assistant Superintendent Priddy chose to do nothing to identify victims of Shafer's abuse, nothing to search the descriptors and unique names of district victims confessed by Shafer, nothing to provide assistance to the sexually assaulted girls in their custody and control.

12.     The District and its administrators created by its deliberate indifference to the safety and wellbeing of children, caused scores of children to suffer sexual abuse at the hands of Gary Shafer. This complaint seeks redress for one of those victims, D.H., and her parents K.H and G.H.

## II.     PARTIES

13.     Plaintiff P.H. Plaintiff P.H. is a minor sexual abuse victim. At all relevant times, P.H. was a resident of Thurston County, Washington.

FIRST AMENDED COMPLAINT FOR DAMAGES



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

14.     __Plaintiff W.H.__ W.H. is the legal guardian and mother of Plaintiff P.H. At all relevant times, W.H. was a resident of Thurston County, Washington.

15.     __Plaintiff J.H.__ J.H. is the legal guardian and father of Plaintiff P.H. At all relevant times, J.H. was a resident of Thurston County, Washington.

16.     __Plaintiff S.A.__ Plaintiff S.A. is a minor sexual abuse victim. At all relevant times, S.A. was a resident of Thurston County, Washington.

17.     __Plaintiff B.M.__ B.M. is the legal guardian and mother of Plaintiff S.A. At all relevant times, B.M. was a resident of Thurston County, Washington.

18.     __Defendant Olympia School District.__ Defendant Olympia School District (the "District") is a public corporation organized under the laws of the State of Washington and is authorized to be sued in such corporate capacity for its acts and those of its agents and employees. The District has its primary place of business in Thurston County, Washington, and is subject to the provisions of Title 28A of the Revised Code of Washington. At all times material, the District operated, and otherwise exercised control over, the public schools within the District, for the benefit of the school-aged children residing in Olympia School District. The District is responsible for all conduct of its agents and employees with respect to the attendance of P.H. and A.S. at school in the District and as a bus passenger. At all relevant times, the District had supervision and control of P.H. and A.S. in loco parentis.

19.     __Frederick David Stanley.__ Defendant Fred Stanley was the District's former Transportation Director during all relevant times and is sued here in his individual and official capacity. Defendant Stanley is being sued in his individual capacity for his actions under color of state law.

FIRST AMENDED COMPLAINT FOR DAMAGES



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

20.    <u>Barbara Greer.</u> Barbara Greer was the District's former Training Director during all related times, a responsibility that included dispatching for special needs transportation routes. Defendant Greer is being sued in her individual capacity for her actions under color of state law.

## III.    JURISDICTION AND VENUE

21.    <u>Jurisdiction.</u> Subject matter jurisdiction is predicated on federal question jurisdiction (28 U.S.C. §1331 and § 1343) due to claims under 42 U.S.C. §1983, and supplemental jurisdiction under 28 USC §1367.

22.    <u>Venue.</u> Venue is proper in this district under 28 U.S.C. § 1391(b), since all defendants reside or resided in this district and the events giving rise to the claims occurred in this district, in Thurston County.

## IV.    FACTS

23.    <u>Facts; Hiring of Shafer and Deliberate Indifference to Child Safety.</u> In August-September 2005, the District, through its agents Stanley and Greer, conducted a 30 minute interview of Shafer and hired him later that day without checking references or past employers. Shafer's past employers included a security company, where he was caught with pornography on his work computer, and the United States Marine Corps, where he was dishonorably discharged for lying. During his interview, he said that he would make a good bus driver because he "love[s] [] children" and because he "like[s] being around kids." His goal was to "get to know the kids." When asked whether he was prepared to accept the responsibility for the lives of the students on the bus, he said, "yes, kind of scary." The District and its agents, including Defendants Stanley and Greer, then allowed Shafer to drive school buses alone on

FIRST AMENDED COMPLAINT FOR DAMAGES



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

several occasions before his background check was cleared, done with deliberate indifference to the safety and welfare of children and done in direct violation of Washington law.

24.     Facts; Danger Creation and the Deliberate Indifference of Transportation Director Fred Stanley. Beginning right away, Shafer asked former Transportation Director Fred Stanley whether he could volunteer to ride along with other drivers on their midday kindergarten, pre-kindergarten, and special needs routes because he liked being around the kids so much, especially the District's most vulnerable. Stanley gave Shafer permission to ride along, and then by permission and acquiescing, gave Shafer complete authorization for his ride alongs, later claiming that he never had reason to distrust Shafer's motivations for wanting to ride along with the vulnerable children.  Under Stanley's blanket permission, Shafer was able to ride along on hundreds of school buses whenever and wherever he wanted. Stanley never assigned Shafer to these rides, never checked on what he was doing on these rides, never kept track of how often or with whom he was riding, and never spoke to any driver about what Shafer was doing during these ride alongs. Furthermore, Shafer was never paid for his hundreds of ride alongs or for helping to manage the kindergarten, pre-kindergarten, and special needs passengers; instead, the Stanley allowed Shafer to do it because he was deliberately indifferent to the danger he created in doing.

25.     Facts; Danger Creation and the Deliberate Indifference of Transportation Director Fred Stanley and the District.  Former Transportation Director Fred Stanley admitted that Shafter was not supposed to be on buses without specific authorization from him and an educational purpose, and yet he did not institute any controls, create any policies, or enforce any existing rule to ensure that Shafer was not riding along on kindergarten, pre-kindergarten,

FIRST AMENDED COMPLAINT FOR DAMAGES

PCVA PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

and special needs routes without authority and an educational purpose. As he has previously testified:

Q    Right. Did you express clearly, to all of the drivers in the Olympia School District transportation department, that they should not allow a grown man, whether he was an employee or not, get on the bus without express authorization and an educational purpose for being on the bus?

A    I would say maybe no, because it was happening.

Q    And in that way, your training, policies, and practices, failed to control Gary Shafer, right?

A    Yeah. In looking back on it, probably, yes.

Q    At the time you should have been looking at that, right?

A    Well, I had no reason to be looking at it.

                    *              *              *

Q    Did you create a policy, after Gary Shafer started riding around on buses, to let drivers know that he had to have authorization and an educational purpose to be on their buses in the midday?

                    *              *              *

A    No.

26.    <u>Facts; Danger Creation and the Deliberate Indifference of Transportation Director Fred Stanley and the District.</u> In addition to never creating a policy, Fred Stanley did not do anything to see what Gary Shafer was doing on the dozens of buses he was riding around on. As he testified:

Q    With respect to the ride-alongs that he was doing in each and every year, 2005-2006 and every year leading up to his suspension in January of 2011, what did you do to check in to see what Gary Shafer was doing all those times that he was riding along on these midday kindergarten, pre-K, and special needs buses?

A    Nothing.

                    *              *              *

Q    For example, did you ask them whether he was sitting with kindergarten girls on the bus?

A    No.

FIRST AMENDED COMPLAINT FOR DAMAGES

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

Q     Did you ask him whether he was sitting in the front right passenger's seat by himself?

A     No.

Q     Did you ask them if he was tickling them on the seats?

A     No.

Q     Did you ask if he was sharing jokes on his phones with the kindergarten girls?

A     No.

Q     Did you ask him if he was really serving in a purpose in being on the bus other than just to be there?

A     No.

*          *          *

Q     Because, ultimately, you didn't care about the reason he was on the bus, right?

A     No.

27.     <u>Facts; Deliberate Indifference of Transportation Director Fred Stanley.</u>  Stanley has repeatedly testified that he had "no reason to be looking" at what Shafer was doing because he "trusted" all of his drivers for having passed a background check. Stanley deliberately ignored the potential danger presented by his driver's conduct even though he knew that drivers had historically engaged in inappropriate behavior, including sexual harassment and physical abuse. Stanley's practice in knowingly allowing Shafer to ride along on school buses for no reason and without an educational purpose was done in complete disregard for the known and obvious consequence that Shafer would abuse children.

28.     <u>Facts; Shafer's Grooming Tactics to Identify Children Victims and the District's Danger Creation and Deliberate Indifference.</u>  In an effort to coordinate his access to young girls, Shafer used several tactics. He would use the ride alongs to identify his targets among the kindergarten, pre-route or keep riding along with his victims on buses being driven by other drivers who would allow him as an unauthorized guest. Shafer frequently and often abruptly

FIRST AMENDED COMPLAINT FOR DAMAGES

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

changed his driving assignments, either looking for victims or escaping potential problems he created by molesting children on his buses. In total, he switched routes a record 18 times over five-and-one-half years, including one abrupt change asking for a route change and then announcing he was leaving for a trucking job.  Compared to other divers, who would change routes at most a few times over decades, Shafer's pattern of changing routes was an obvious red flag.  Shafer would sexually abuse girls, including P.H. and S.A., while riding along with another driver without an official purpose, or he would sexually abuse them by pulling the bus over or arriving at stops early so that he would have down time with the girls. He took full advantage of Defendant Stanley's "open door" ride along policy that directly created the danger of allowing him to access the young girls on other drivers' kindergarten, pre-kindergarten, and special needs routes.

29.     Facts; Notice, Red Flags, and the District's Danger Creation and Deliberate Indifference. Shafer had been driving his assigned route when, in November 2006, he suddenly put in for a route change and then announced that he would be leaving for a higher-paying job as a long-haul trucker. He told many bus drivers that he was having financial problems and needed more money. The reality was that he abruptly changed from a special needs bus route because over concerns over getting caught for sexual abuse. Even though he successfully completed the trucking program at the top of his class, Shafer left the trucking work immediately and returned to the bus barn to work part-time for the District. In Shafer's own words, "I was going to be doing long haul truck driving starting last winter but I decided not to for various reasons even though it would have been a lot of money."

30.     Facts; Notice, Red Flags, and the District's Danger Creation and Deliberate Indifference. When confronted by a fellow bus driver about why he left his long haul trucking

FIRST AMENDED COMPLAINT FOR DAMAGES



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

job despite his money woes, Shafer told his co-workers that he returned as a part-time school bus driver because he missed contact with children. From this incident and others, Shafer's fellow bus drivers found him very strange and unusually interested in children. He was being described as "odd" by at least one school counselor and was reportedly observed viewing child pornography on a bus barn computer by a fellow driver. Shafer has also admitted and has been seen by other bus drivers pulling his bus over to the side of the road or in parking lots for no apparent reason. At least one driver raised concerns with the administrative office about Shafer being parked for no apparent reason during a route. Even Fred Stanley himself has admitted that he confronted Shafer about pulling over his buses for no reason.

31.     <u>Facts; Notice, Red Flags, and the District's Danger Creation and Deliberate Indifference.</u> In 2008, it is understood that a kindergarten boy went home one day after school and told his mother that the school bus driver was making farting noises, tickling he and another student, and otherwise horsing around with them while on the bus.  The boy told his mother that the driver pulled over the school bus to engage in these activities and that they were the last two on the bus.  The mother was concerned about the bus driver's behavior and conduct. A short while later, the boy said that the same bus driver again pulled stopped the bus and was horsing around with he and another kindergarten aged boy.  At this point, it is understood that the concerned mother called the District Transportation Department and told them about the bus driver's inappropriate behavior while driving her son to and from school.  The bus driver was Gay Shafer.  The District and its agents did nothing.

32.     <u>Facts; Notice, Red Flags, and the District's Danger Creation and Deliberate Indifference.</u> In the fall of 2009, McLane Elementary School bus driver Karen Nelson became ill and the District used sub drivers to cover the route. Shafer began targeting kindergarten girls

FIRST AMENDED COMPLAINT FOR DAMAGES

Page 12 of 35



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

for abuse on the route by riding along with various sub drivers. He also drove the bus as a substitute bus driver. On one occasion that he was driving, Shafer dropped off a young girl who as so shaken by the experience that she told her dad, Kevin Gearheart, that she never wanted to ride the bus again.

33.    Facts; Notice, Red Flags, and the District's Danger Creation and Deliberate Indifference. Mr. Gearheart called the District Transportation Department about concerns that a male substitute driver was dropping his kindergarten daughter off alone, a half-hour late, and so traumatized that she refused to ride the bus any longer. Despite the father's deep concerns and repeated calls, the District downplayed any potential for wrongdoing and performed no investigation; it simply reiterated that all bus drivers receive background checks, and therefore, there was no need to do anything further. Tragically, after Shafer's molestation surfaced in 2011, Mr. Gearheart immediately recognized Shafer's face as the driver who had left his daughter traumatized from the bus. He confronted the District about Shafer's presence on the bus, but the District lied and said that Shafer never drove that bus.

34.    Facts; Red Flags and the District's Danger Creation and Deliberate Indifference. District employees discussed these "red flags" but nothing was done to monitor or investigate Shafer. By ignoring evidence that Shafer was acting inappropriately, including actual reports that Shafer was inappropriately touching and otherwise engaging in peer-to-peer activities with children on the school bus, commonly known as sexual grooming, as well as ignoring evidence of Shafer's obsessive fixation on routes for kindergarten, pre-kindergarten, and special needs children, the District acted with deliberate indifference toward the safety of children in its custody and control, including Plaintiffs P.H. and S.A., and interfered with their education.

FIRST AMENDED COMPLAINT FOR DAMAGES

Page 13 of 35

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

1
2
3
4
5
6
7

35.     Facts; Sexual Abuse of N.L. In late December 2010, the Thurston County Sheriff's Department received a report that Olympia School District bus driver Gary D. Shafer sexually assaulted a kindergarten girl named N.L. on a bus driven by fellow bus driver Mario Paz. Shafer was riding along with Paz to "learn the route" and had the kindergarten girl in his lap while seated behind the driver. Shafer sexually abused N.L. while she was in his lap, and N.L. disclosed the abuse to her mother, who in turn contacted the District.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

36.     Facts; Shafer's Admitted to Molesting Scores of Children at the District. In or around March 21, 2011, Shafer was hoping to obtain a reduced criminal sentence through Washington's Sex Offender Special Sentencing Alternative ("SOSSA"). As required by SOSSA, Shafer had to submit to a psychosexual evaluation, where he needed to admit to his past sexual deviancies and then take a polygraph. During this evaluation, he admitted to sexually abusing literally dozens of little girls while they were riding to and from school on the bus; Shafer identified some of his minor victims by their full name, some by a physical description, and some by their first name; Shafer admitted to targeting kindergarten, pre-kindergarten, and special needs bus routes since the start of his employment with the District; Shafer admitted to regularly spending unpaid free time riding along on others' buses to groom and assault children and no one from the District ever confronted him or prevented him from accessing children in this fashion; Shafer admitted to pulling his own buses to the side of the road to molest young girls on his bus; Shafer admitted to detaining young girls in his bus after arriving to destinations early; Shafer admitted to accessing pornography on the District bus barn's computers on a regular basis without the District ever tracking, logging, or confronting him about it; Shafer admitted to masturbating in the bus barn and on the busses; and finally,

FIRST AMENDED COMPLAINT FOR DAMAGES

PVA PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

Shafer admitted to photographing, videotaping, and sexually assaulting up to 30 young District students while working in his capacity as an Olympia School District bus driver.

37.    Facts; Shafer Admitted to Abusing P.H. and S.A. During His Psychosexual Examination. Shafer also admitted to his psychosexual evaluator, Sue Batson, that he sexually molested a girl with the first name of [P.]. Shafer also admitted that he sexually molested a girl with the first name of [S.] when he was 27 years old. He further identified [S.] as a girl who was 5-6 years old.

38.    Facts; Jennifer Priddy Has Had the Batson Psychosexual Report Since 2011. The District's Assistant Superintendent of Fiscal Operations, Jennifer Priddy, who is named individually as a defendant in this lawsuit, is also a board member at large for the District's insurance risk pool, known as SIAW. Since the beginning of the discovery of Shafer's abuse, Priddy has been intimately involved with the civil litigation arising out of the District's failure to protect its students from Shafer's abuse. She has regularly communicated with the District's attorneys over the past several years with regard to the civil litigation, even attending the first trial in this sex abuse civil litigation series known as *Gutierrez v. Olympia Sch. Dist.*, a case that was filed in Thurston County on behalf of N.L.

39.    Facts; Defendants Acted With Deliberate Indifference to the Rights of P.H. and S.A. and Made No Effort Notify Their Parents of the Abuse. As early as March 21, 2011, Plaintiffs P.H. and S.A. were identified by their first names as being victims of Shafer's abuse in his psychosexual report. Not only are their first names sufficiently unique so as to rule out many other students, the same March 21 report provided other critical facts—such as ages and other dates—that was enough for Priddy and others, including Lahmann and Cvitanich, to identify P.H. and S.A. Despite having access to the information sufficient to identify P.H. and

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

S.A. as victims of Shafer's molestation, Priddy and the District, including Lahmann and

Cvitanich, failed to timely and adequately disclose the information to their parents, W.H. and

B.M., respectively, done in deliberate indifference to their rights. Defendants' clear motive was

to shield SIAW from additional sexual abuse insurance claims; in doing so, Priddy, Lahmann,

and Cvitanich knowingly took steps to obstruct, obscure, delay, and even withhold information

from the parents of known sexual abuse victims, including the Plaintiffs here.  Not only was

this failure to report done in violation of the U.S. Constitution and Washington law, the result

was also to unreasonably interfere with Plaintiff P.H. and S.A.'s educational opportunities, as

these children were forced to continue suffering from the effects of childhood sexual abuse,

without treatment, while trying to attend a school where the administrators did nothing to help

them to avoid financial exposure.

      40.   <u>Facts; Priddy Admitted to Making No Effort to Identify Sex Abuse Victims that Shafer Identified In March 2011.</u> On April 17, 2012, Priddy gave sworn deposition testimony where she admitted to making no effort to identify other Shafer victims for up to at least a year after he identified them in the psychosexual report:

| | |
|---|---|
| Q | [W]as there a point at which the district decided it would reach out to parents and let them know about the danger that Shafer presented? |
| A | We did not send a blanket e-mail or letter to parents, so I think in the way that you're phrasing your question, I would say no. |
| Q | How about in a more directed fashion? Was there any parent that the district notified about the danger Shafer presented to their child? |
| A | No. The investigation was still ongoing. |
| Q | I'm talking about afterwards. |
| A | Is the investigation complete? I – |
| Q | He's in the can for 15 years, so I'd like to think most people consider it closed. |

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

1   A   [ . . . ] We viewed it as the sheriff's responsibility, and the sheriff – we are going to assist the sheriff in any way we could.

2   Q   My question, though, is: Did the District take any steps to notify parents about the danger that Shafer presented to their child?

3   A   Okay. So we don't know which parents we would contact. We have not received a list of potential – you know, we do not have a – kind of a list from the sheriff's office of who we would contact.

4   Q   What about children that would be on Shafer's bus alone? Have you notified parents that have children that were in that situation?

5   A   No. I don't think we know what parents to notify that were in buses alone with Shafer on occasion?

6   Q   What steps has the district taken to identify those parents who had kids that were in buses alone with Shafer on occasion?

7   A   We have not notified any parents that we – we have not notified any parents.

8   Q   My question is a little different.

9   A   Okay.

10   Q   What steps did the district take to identify parents who had children that might have been alone with Gary Shafer on the bus?

11   A   I don't believe that we have identified children that might have been alone on a bus with Gary Shafter.

12   Q   I'm trying to understand what steps the district has taken to try to identify those parents whose children may have been alone on the bus with Shafer.

*          *          *

13   A   I don't think that we have been asked to identify, and so we have not, and I don't know how we would.

14   Q   [ . . . ] My question is: What steps has the district taken to identify parents whose children might have been alone with Gary Shafer on the bus.

*          *          *

15   A   I think I've answered the question. We have not identified parents and children who might have been alone with Gary Shafer. We do not know how we would identify that.

16   Q   I just gave a good example of how to do that, which is to look at the routes. Has the district looked at the routes to try to understand whether Shafer had isolated particular vulnerable children?

FIRST AMENDED COMPLAINT FOR DAMAGES

PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

\*      \*      \*

A    We have answered questions about what routes he has driven. We have not, to my knowledge, looked at routes and the timing of the route to understand if a child could have been alone. There are so many factors that would – that would make the information impossible to obtain.

Q    Is the insurance deductible part of what would be a factor prohibiting you from being able to do that?

\*      \*      \*

A    An insurance deductible does not enter into this at all.

Q    So then let's explore the other reasons why the district hasn't gone about trying to identify students who might have been isolated by Gary Shafer. [. . .] Has the district taken steps to analyze the bus routes that Gary Shafer was selecting, to figure out what students may have been on those buses and were exposed to Shafer and the dangers that he presented?

\*      \*      \*

A    We do not – on bus routes, my understanding is, we do not have a full listing of every child that is assigned to the route.

\*      \*      \*

Q    The questions, though, that I'm asking right now, are directed at the district, which has the responsibility to protect children who attend schools in the district and who were exposed to Gary Shafer. And my question to you is: Hast the district analyzed Gary Shafer's bus routes to figure out who might have been isolated by Gary Shafer?

A    My understanding is that the bus route information is not complete, and, therefore, you could not identify who might have been isolated.

41.    <u>Facts; Defendants Ignored Shafer's Admissions and Made No Effort to Contact the Parents of P.H. and S.A. Even Though They Were Clearly Identified as Early as March 2011</u>. Contrary to this sworn testimony, Priddy and her chain of command, including Lahmann and Cvitanich, knew which children were on its school buses. They also knew from Gary Shafer's admissions during his psychosexual examination that he identified P.H. and S.A. by first name as well as by other circumstantial evidence, including their age. In a complete disregard for the wellbeing of P.H. and S.A., Defendants refused to disclose and otherwise

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

withheld critical information to their parents. As both a SIAW board of director and the District's liaison for the Gary Shafer sexual abuse litigation, Priddy had a known conflict of interest and a motive to shield SIAW from further claims arising out of Shafer's sexual abuse.

42.   <u>Facts; Priddy was Referred to Law Enforcement for Her Failure to Report Known Sexual Abuse.</u> During the summer of 2013, Priddy was referred to the Office of Superintendent of Public Instruction ("OSPI") and to the Thurston County law enforcement for her failure to report the known sexual abuse of P.H. and S.A. as required by Washington law. In response to this referral—over two years after the psychosexual report—Priddy finally provided law enforcement with the names of other Shafer abuse victims, including P.H. and S.A. This was the first time Priddy ever took any affirmative steps to make the referrals of sexual abuse to law enforcement for these two minor Plaintiffs.  A few months later, On October 2, 2013, Priddy again gave deposition testimony, where she testified:

> Q   Are you aware of any efforts by the district to identify girls who may have been harmed by Gary Shafer outside of the three for whom there have been convictions?
>
> A   Yes, I do.
>
> Q   Tell us about that.
>
> A   So early on in the case, Sergeant Stine [sic] was – asked us about how to identify, I think, two or three girls, and we helped her identify those girls, and she was investigating the case and the possibility of them having been harmed. And then recently we have been working with another detective to identify two more girls.
>
> Q   [S.A.] and [P.H.], no doubt; right?
>
> A   Yes.
>
> Q   And who is the detective you were working with?
>
> A   Detective Ivanovich.
>
> Q   And have you identified [S.A.]?

*          *          *

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

A     [S.A] went to Madison Elementary School, L.P. Brown Elementary School, and Garfield Elementary School.

                    *                    *                    *

       And so I called him to let [Detective Ivanovich] know that there were possible additional victims that hadn't been identified. And so I gave him Gary Shafer's July deposition and then began searching our student records.

Q     Did you know, from our deposition back last April, these are the same girls that I was talking with you about then? Why didn't you take some steps prior to this summer to reach out and identify girls and notify the two girls, [P.H.] and [S.A.].

A     Well, this information [Shafer's deposition] was more specific on these two girls, [P.H.] and [S.A.].

Q     Is the same information Gary Shafer provided in the Batson [psychosexual] report – which you and the district had access to last year; right?

A     Which – yes. Well, I don't know if it's same or not. All I know is that in this deposition I had enough to go on, rather than just names, and I don't know if it was the same in Sue Baston's [sic] report or not.

Q     It is [S.A.] and [P.H.]. So what information more from Gary Shafer's information did you get that prompted you to finally call the police?

                    *                    *                    *

A     Well, Sue – is it Baston or –

Q     Batson.

A     Batson. Sergeant Stine was working with that report, and at the time we were working with Sergeant Stine, so in this report, in this deposition, I started working with Ivanovich. And so I wasn't kind of – Sergeant Stine had completed her work, and we had responded to whatever questions that she gave us to help. When I sent this deposition to Detective Ivanovich then he and I talked about some clues to use to search for [S.A.] and [P.H.].

Q     And what were the clues that were different from what you had with Sue Batson's report?

A     Well, as I said, when Sue Batson's report was fresh and Sergeant Stine was working with it, I was working at the request of Sergeant Stines, and so I don't – I didn't – I don't have Sue Batson's report kind of committed to memory. I can't do a comparison of the details. All I know is that, when I had the [Shafer] deposition in July, I went to Detective Ivanovich.

FIRST AMENDED COMPLAINT FOR DAMAGES

PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

| | | |
|---|---|---|
| 1 | Q | When I asked you basically the same questions in April of 2012, it was almost a year after Sergeant Stines had concluded her work and her investigation to Gary Shafer. |
| 2 | | |
| 3 | A | Mm-hm. |
| 4 | Q | And so I provided you with [S.A.] and [P.H.]'s name then and asked the question, "Aren't you concerned about the welfare of these children?" So tell me what happened between April of 2012 and this summer [of 2013] when you finally picked up the phone to talk to Detective Ivanovich in terms of efforts by you and/or the district to reach out to the girls who'd been molested by Gary Shafer or may have been molested by Gary Shafer. So in other words, between April of 2012, when I was asking you these questions – |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | A | Right. |
| 10 | Q | — under oath and this summer, when you finally reached out to Detective Ivanovich, what efforts had anyone made by the District to identify [S.A.], [P.H.], or any of the other girls who either were or may have been molested by Gary Shafer? |
| 11 | | |
| 12 | A | In—I believe in 2011 and 2012, we were working with Sergeant Stine, and Sergeant Stine was directing us who to look for and what to look for and what information she had. |
| 13 | | |
| 14 | Q | I'm talking about April of 2012, which is a year after Sergeant Stines was done. |
| 15 | | |
| 16 | A | Okay. I – [. . .] I think that – I can't remember what you asked me in 2012. I am unclear some of those timelines, so I'll answer what I've done now, and that is, give Detective Ivanovich the deposition and comb through that deposition with Detective Ivanovich to identify what clues there were for us to work on. I cannot remember the time frame, but I can tell you we were working at Sergeant Stines' direction in the past. |
| 17 | | |
| 18 | | |
| 19 | Q | Right. And when I deposed you last April, I pointed out that Sergeant Stines had been done with her investigation for a year. And so I'm really curious about whether you and the district did anything between April of 2012 and, say, June of 2013 to locate and assist girls who may have been molested by Shafer. |
| 20 | | |
| 21 | | |
| 22 | A | I can't recall the time frames, so not going to be able to answer further. |
| 23 | Q | And the truth is that you only called Detective Ivanovich because I put the district between a rock and a hard place by sending the letter identifying the information and pointing out that the school district had done nothing to help find these people; right? |
| 24 | | |
| 25 | | |
| 26 | A | I disagree. |

*                    *                    *

FIRST AMENDED COMPLAINT FOR DAMAGES

PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

1  A    I disagree.

2  Q    Well, that information were you able to give Detective Ivanovich that
       helped either identify or initiate the investigation into the abuse of
3      [S.A.]?

4  A    We were able to give him [S.A.'s] name.

5                        *               *               *

   Q    Have you spoken with [S.A.'s] parents?
6
   A    No.
7
   Q    Has anyone from the district contacted [S.A.'s] parents?
8
   A    No.

9      43.    Facts; Danger Creation and the Deliberate Indifference Toward the Children on

10 School Buses. Despite clear evidence of Shafer's widespread sexual abuse on school buses, the

11 District has continuously denied any responsibility, asserting that it had no reason to distrust

12 any of its bus drivers. The District's former Transportation Director, Fred Stanley, recently

13 claimed that "[t]here's no reason for a bus driver not to sit with children. . . . We hire good

14 people and everybody has been background checked and we have no reason not to trust our

15 employees."  This alarming attitude was the milieu that allowed Shafer unlimited access to

16 abuse scores of children on school buses.  This attitude disregarded known red flags with

17 Shafer, known literature on the risks that sexual molesters are among the ranks of bus drivers,

18 and ultimately, the known or obvious consequence that Shafer would abuse children given the

19 opportunities created.  The resulting harm as complained of in this complaint was due for no

20 other reason than the affirmative danger that Defendants created in this lawsuit by knowingly

21 allowing Shafer to have unlimited access to ride alongs and other opportunities to sexually

22 groom and molest children.

23     44.    Facts; Deliberate Indifference to the Welfare of Children. When the factual

24 verifications of Shafer's molestations began circulating, and people began to push for answers

25

26

FIRST AMENDED COMPLAINT FOR DAMAGES



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

as to how it all happened Transportation Department Director Fred Stanley refused to entertain the possibility that Shafer would have molested the children and sent a chilling threat to the bus drivers:

> These rumors [about Shafer] are slanderous and the people spreading them could and I feel should be charged with a crime and prosecuted to the fullest extent of the law. If you are one of those spreading this information and I hear it, I will report it to the proper authorities and I want to encourage those that have told me they are highly offended by this kind of behavior to do the same.

45.    Facts; Danger Creation, Deliberate Indifference, and Giving Shafer Unrestricted Access to Molest Children.   The District's former Transportation Training Coordinator, Barbara Greer, endorsed Stanley's statements. She stated that the District has not adopted a policy regarding where male bus drivers riding along must sit alone because "we trust our drivers, and we trust their judgment." Greer added, "[after the arrest hit the news] our role was to be supportive of . . . the drivers because we knew that the drivers were going to be very upset." When asked whether common sense would have advised bus drivers to be mindful of obvious signs of grooming and risky situations, Greer replied, "I don't deal in common sense, sir."

46.    Facts; Danger Creation, Deliberate Indifference, and Giving Shafer Unrestricted Access to Molest Children. Former District Superintendent William Lahmann, the official ultimately responsible for the safety of the children at the time of the abuse, also admitted to blind and unsupported faith in the District's entire group of bus drivers, even if at the expense of children. When challenged whether bus driver Mario Paz acted appropriately in a situation where multiple girls on his bus were sexually assaulted by his friend Shafer in the seat immediately behind his, Lahmann responded, "I don't know what he did or didn't do, so

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

my belief is that he was acting responsibly. I haven't heard otherwise. . . . I make the assumption that he acted properly."

47.     **Facts; Danger Creation and the Deliberate Indifference of Lahmann and Defendant Greer.** Former Superintendent Lahmann and former Transportation Coordinator Greer were complicit in Stanley's decision to allow Shafer unrestricted and unmonitored access to ride alongs.  Lahmann has previously provided sworn testimony that there was no reason not to allow Shafer unrestricted an unmonitored access. Greer previously testified that there was no reason to distrust Shafer.  Their complicity created a perilous situation for P.H. and S.A. and was done in disregard to the known or obvious consequence that Shafer would sexually groom and molest them.

48.     **Facts; Creation of Danger, Deliberate Indifference, and Lack of Training.** The District, Stanley, Greer, and Lahmann failed to properly train its employees on how to recognize obvious signs that Shafer was using school buses to molest young vulnerable girls. In 2006, the Washington Office of Superintendent of Public Instruction distributed a statewide publication entitled "What every employee must be told in school districts," a publication concerning the warning signs of sexual grooming of children. District bus drivers did not receive training on this publication or the information contained within it.

49.     **Facts; Creation of Danger, Deliberate Indifference, and Lack of Training.** Later, in the spring of 2010, the school year before Shafer was arrested for his molestations, the District's superintendent, Lahmann, and other District administrative-level personnel received professional boundaries training. This training included a valuable PowerPoint presentation on awareness of the dangers school personnel pose as potential child molesters, and included slides emphasizing that District employees had to "be on guard" regarding the behavior of their fellow

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

District personnel, "even though they're school employees who have gone through background checks." In particular, one of the slides stated that 12 percent of *all* school-related molestation charges each year involved school bus drivers, even though they comprised a relatively small percentage of the total number of District employees. Another slide was entitled "Five-Step process" and discussed sexual grooming behaviors of which District employees needed to be aware. One of the steps consisted of identifying a vulnerable child and engaging that child in peer-like involvement. Other steps identified by the slide were desensitizing the child to touch and isolating the child in out-of-sight spots.

50.     <u>Facts; Creation of Danger, Deliberate Indifference, and Lack of Training.</u> But in an act of deliberate indifference toward the safety of children on school buses, the District and its top administrators, including Lahmann, chose against providing the valuable boundary invasion training to District bus drivers. The District specifically chose not to train its employees on the PowerPoint presentation or the information contained therein because it "felt people would reject some of the negativity of the message." Instead, the District developed a one-page "pyramid" that lacked the specific and valuable information contained within the PowerPoint presentation, such as the risk of child molestation posed by certain groups of school personnel, and its plan was to train the District's Transportation Director, Fred Stanley, on boundary invasions so that he could then implement a training for the bus drivers. But in another act of deliberate indifference toward the safety of children on school buses, Stanley and his assistant knowingly skipped the watered-down boundary invasion training, and it was never brought to the transportation department. Compounding matters, Lahmann failed to follow-up with the various departments to ensure that his trickle down plan was working, another act of deliberate indifference. The District failed to train its bus drivers on even this obtuse "pyramid"

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

until after Shafer's arrest. According to one veteran District bus driver, Dale Thompson, knowing that 12 percent of school personnel molesting children were bus drivers would have been useful because he otherwise "couldn't imagine" and would not suspect a fellow bus driver of committing such an act.

51.     Facts; Creation of Danger, Deliberate Indifference, and Lack of Training. Similarly, the District adopted a "professional boundaries" policy in spring of 2010 but failed to advise bus drivers that any such policy existed. The policy's stated purpose was to "provide all staff, students, volunteers and community members with information to increase their awareness of their role in protecting children from inappropriate conduct by adults." The policy defined "[i]nappropriate boundaries" as "acts, omissions or patterns of behavior by a school employee that do not have an educational purpose and result in abuse." It also provided, "All employees and volunteers will receive training on appropriate staff/student boundaries." But like the earlier ignored training sessions on sexual molestation, District bus drivers never received these policies or procedures or any training on them before Shafer was arrested for sexual molestation.

52.     Facts; Creation of Danger, Deliberate Indifference, and Lack of Training. The District brushed aside the importance of training school employees on understanding that a molester's best camouflage is a school district's unwillingness to see him. This is particularly alarming in light of the research of leading commentators, who teach that accepting that molesters may lurk in our midst is crucial to preventing child abuse:

> Many educators do not believe that a colleague could sexually exploit a student. They believe that if such abuse happens, it happens in some other community and it is so rare and idiosyncratic that it does not warrant attention. Many believe that educators already know they should not have sexual relationships with students. Consequently, some are insulted when they are required to attend

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

> training on this issue. Unfortunately, it is just such attitudes that have created the
> educational climate that allows sexual abuse to continue.

Shoop at 63. By failing to properly train employees, the District and the individually named defendants herein who were responsible for training drivers created a climate that allowed Shafer's sexual abuse to continue.

53.   Facts; Creation of Danger, Deliberate Indifference, and Lack of Training. The District and its agents, including Defendants Stanley, Greer, and Lahmann acted with deliberate indifference toward the safety of its students, including P.H. and S.A., by failing to adequately train, monitor, or supervise bus drivers by ensuring that they all understood how to spot the signs of grooming behaviors, professional boundary invasions, or other red flags of sexual abuse.

54.   Facts; Creation of Danger, Deliberate Indifference, and Lack of Training. The District's employees did not receive crucial training on how to spot molesters. District administrators received "boundary invasion" training in the spring of 2010, which taught about the significant danger of school personnel molesting children and included statistics about the specific danger presented by bus drivers. Despite the considerable value in this training, as Lahmann acknowledged, District officials became deeply offended by the notion that District might include child predators. District officials thought that the presentation was "negative" and refused to train District employees on the subject of boundary invasions. Defendant Fred Stanley skipped the boundary training, and Lahmann did nothing to ensure that he was trained or brought the valuable boundary invasion information to the Transportation Department.

55.   Facts; Deliberate Indifference Toward the Welfare of Children. Despite clear evidence of significant sexual abuse by Shafer, the District has made little effort to locate and identify 30 or more other children who were sexually abused on its school buses. Plaintiffs

FIRST AMENDED COMPLAINT FOR DAMAGES

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

P.H. and S.A. were among those identified by Shafer as victims, and yet the District and its agents, including Priddy, Lahmann, and Cvitanich, never disclosed the critical facts to law enforcement or the parents of these children who they knew were abuse victims.

56.   **Facts; Danger Creation, Deliberate Indifference, and Lack of Policies and Procedures.** The District and its agents, including Defendants Stanley and Lahmann and Cvitanish, acted with deliberate indifference toward the safety of its students, including P.H. and S.A., by failing to promulgate, issue and enforce appropriate policies and procedures concerning ride alongs and reporting sexual abuse. Instead, as explained above, the defendants here did nothing to ensure that Shafer was riding along on school buses for legitimate, approved school purposes; did nothing to track his ride along behaviors; and did nothing to otherwise prohibit his unbridled access to groom and sexually abuse the District's most vulnerable population.

57.   **Facts; Discrimination Toward Minor Plaintiffs.** The minor Plaintiffs in this lawsuit, S.A. and P.H., were young, kindergarten-aged schoolgirls who were targeted by Gary Shafer based on their gender.  S.A. and P.H. were treated differently by Defendants and Gary Shafer than other children of different gender.  Their status as a young, kindergarten-aged schoolgirl was a driving force of and substantial factor in the sexual abuse they endured.

58.   **Facts; Proximate Cause and Danger Creation.** Defendants Stanley, Greer, and Lahmann acted with deliberate indifference to the frequency in which Shafer was riding along on school buses without pay and without an official purpose, deliberate indifference to the risk that pedophiles posed to children on school buses generally, deliberate indifference to the red flags that Shafer was a threat to children, and deliberate indifference to ensuring that is bus drivers were properly trained on how to spot molesters. As a result of this widespread and

PCA PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

alarming deliberate indifference, these individual defendants created the danger that pedophiles like Shafer would have unrestricted access to sexually abuse minors on school buses, which here resulted in the sexual abuse of P.H. and S.A.

59.   Damages. As the proximate result of the deliberate indifference to the health and safety of minor sexual abuse Plaintiffs P.H. and S.A., as set forth above, in violation of their Ninth and Fourteenth Amendment rights and Washington law, Plaintiffs suffered from mental anguish and severe emotional distress.  Plaintiffs P.H. and S.A. also suffered damages from being denied the benefits of an education as provided by 20 .S.C. § 1681, *et seq*. The minor sexual abuse victims' parents also suffered damages to the parent-child relationship under Washington common law.

60.   Punitive Damages. Defendants acted with callous indifference and with reckless disregard of Plaintiffs' constitutional rights.

## V.    CAUSES OF ACTION

### COUNT I
### VIOLATION OF CIVIL RIGHTS
### AS TO STANLEY AND GREER
### (42 U.S.C. § 1983)

61.   Civil Rights Violation. Based on the paragraphs set forth and alleged above, Defendants Stanley and Greer are liable for compensatory and punitive damages for their creation of an actual, particularized danger that Plaintiffs P.H. and S.A. would be sexually abused by Shafer, done in deliberate indifference toward the safety and wellbeing of P.H. and S.A., including these defendants' failure to protect the minor plaintiffs from sexual abuse and exploitation by a serial pedophile while they were riding a school bus to and from school, all done in violation of the due process and equal protection afforded under the Fourteenth

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

Amendment as well as in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), brought pursuant to 42 USC § 1983..

## COUNT II
## VIOLATION OF CIVIL RIGHTS - *MONELL*
## AS TO THE DISTRICT
## (42 .S.C. § 1983)

62.     <u>Civil Rights Violation.</u> Based on the paragraphs set forth and alleged above, the District is liable for compensatory and punitive damages for its actions in failing to promulgate, issue, and enforce appropriate procedures and policies concerning (1) the reporting of known or suspected sexual abuse of P.H. and S.A., and (2) the safe transport of its students including P.H. and S.A., who both suffered sexual abuse and exploitation as a direct and proximate result of the District's failures and as a result of deliberate indifference to their wellbeing and safety, as well as for its actions in failing to adequately train, monitor, or supervise its drivers to ensure the safe transport of its students, including P.H. and S.A., all in violation of the Ninth and Fourteenth Amendments and 42 USC § 1983.

## COUNT III
## VIOLATION OF TITLE IX
## AS TO DEFENDANT OLYMPIA SCHOOL DISTRICT
## (20 .S.C. § 1681, *et seq.*)

63.     <u>Title IX.</u> Based on the paragraphs set forth and alleged above, the District is liable for compensatory and punitive damages for its actions in creating and/or subjugating Plaintiffs P.H. and S.A. to a hostile educational environment in violation of Title IX, when the District and its officials had actual knowledge of the sexual assaults of P.H. and S.A. created by its failure to supervise Gary Shafer and protect children, and when the District and its officials failed to take immediate, effective remedial steps to resolve the sexual harassment and instead acted with deliberate indifference toward Plaintiffs P.H. and S.A. and other similarly

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

situated students, the result of which was to exclude Plaintiffs from participation in, being denied the benefits of, and being subjected to discrimination in the District's education program in violation of Title IX.

**COUNT IV**
**COMMON LAW NEGLIGENCE**
**AS TO ALL DEFENDANTS**
**(Washington Common Law)**

64.     <u>Negligence.</u> Based on the paragraphs set forth and alleged above, the District's conduct constituted all forms of common law negligence, or alternatively gross negligence, including negligent training, retention, and supervision of Gary Shafer, and the District is liable for damages proximately caused by its negligent, or alternatively, gross negligent, acts and omissions as provided in more detail above.

**COUNT V**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**AS TO ALL DEFENDANTS**
**(Washington Common Law)**

65.     <u>Negligent Infliction of Emotional Distress.</u> Based on the paragraphs set forth and alleged above, the District's conduct constituted negligent infliction of emotional distress, and the District is liable for damages proximately caused as a result.

**COUNT VI**
**OUTRAGE**
**AS TO ALL DEFENDANTS**
**(Washington Common Law)**

66.     <u>Outrage.</u> Based on the paragraphs set forth and alleged above, the District and its agents intentionally and/or recklessly caused severe emotional distress to Plaintiffs due to its extreme and outrageous conduct, as more fully described above, that went beyond all possible bounds of decency and can only be regarded as atrocious and utterly intolerable in a civilized community, constituting the tort of outrage for which the District is now liable.



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

**COUNT VII**
**LOSS OF CONSORTIUM**
**AS TO ALL DEFENDANTS**
**(Washington Common Law)**

67.   <u>Loss of Consortium.</u> Based on the paragraphs set forth and alleged above, the District's tortious conduct caused Plaintiffs W.H., J.H., and B.M. to suffer damage to the relationships with their respective minor daughters, a recoverable damage under Washington law.

**COUNT VII**
**SEXUAL DISCRIMINATION**
**AS TO THE DISTRICT**
**(Washington Law Against Discrimination)**

68.   <u>Washington Law Against Discrimination.</u> Based on the paragraphs set forth and alleged above, the minor Plaintiffs were members of a protected class whom were at all times relevant utilizing a place of public accommodation pursuant to RCW 49.60 *et seq.* when the District and/or its agents or employees committed acts that directly or indirectly resulted in distinction, restriction, and/or discrimination of the minor Plaintiffs by treating them in a manner different to the treatment provided to persons outside the minor Plaintiffs' protected class, including but not limited to sexual harassment and sexual abuse of the minor Plaintiffs, and the minor Plaintiffs' protected status was a substantial factor that caused the distinctive, restrictive, and/or discriminatory treatment by the District and/or its agents or employees, all of which was contrary to the laws of Washington set forth under RCW 49.60 *et seq.*, and all of which proximately caused the minor Plaintiffs to suffer damages.

## VI.     RESERVATION OF RIGHTS

69.   <u>Reservation of Rights.</u> Plaintiffs reserve the right to assert additional claims as may be appropriate following further investigation and discovery.

FIRST AMENDED COMPLAINT FOR DAMAGES



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

# VII.    JURY DEMAND

70. <u>Jury Demand.</u> Under the Federal Rules of Civil Procedure, Plaintiffs demand that this action be tried before a jury.

# VIII.    PRAYER FOR RELIEF

71. <u>Relief.</u> Plaintiff respectfully requests the following relief:

A.    That the Court award Plaintiff appropriate relief, to include all special and general damages established at trial;

B.    That the Court impose punitive damages under any provision of law under which punitive damages may be imposed;

C.    That the Court award costs, reasonable attorneys' fees, and statutory interest under any applicable law or ground in equity, including 42 U.S.C. § 1988, RCW 49.60 *et seq*., and all other applicable bases for an award of attorneys' fees and litigation costs;

D.    That the Court award pre-judgment interest on items of special damages;

E.    That the Court award post-judgment interest;

F.    That the Court award Plaintiff such other, favorable relief as may be available and appropriate under law or at equity; and

G.    That the Court enter such other and further relief as the Court may deem just and proper.

///

///

///

///

///

FIRST AMENDED COMPLAINT FOR DAMAGES



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

1

Respectfully submitted,

2

3    Dated: 4/17/2019

4                                    By:    /s/ Darrell L. Cochran
                                             One of Plaintiffs' Attorneys
5

6    DARRELL L. COCHRAN
     (darrell@pcvalaw.com)
7    KEVIN M. HASTINGS
     (kevin@pcvalaw.com)
8    Pfau Cochran Vertetis Amala PLLC
     911 Pacific Ave., Ste. 200
9    Tacoma, WA 98402
     Tel: (253) 777-0799
10

11   818-9751-1983, v.  3

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FIRST AMENDED COMPLAINT FOR DAMAGES



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## CERTIFICATE OF SERVICE

I, **Laura Neal**, hereby declare under penalty of perjury under the laws of the State of Washington that I am employed at Pfau Cochran Vertetis Amala PLLC and that on today's date, I filed the foregoing with the Court via ECF, automatically serving the following individuals:

Mr. Michael E. McFarland, Jr.
Evans, Craven & Lackie, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

Jerry  J. Moberg
Jerry J. Moberg & Associates
451 Diamond Drive
Ephrata, WA  98823

( ) Via U.S. Mail
( ) Via Facsimile
(X) ECF
( ) Via Email

DATED this 17th day of April, 2019.


/s/ Laura Neal
Laura Neal
Paralegal

FIRST AMENDED COMPLAINT FOR DAMAGES

Page 35 of 35

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654