Received From
SEATTLE

JUL 27 2020

\_\_\_\_\_ FILED
\_\_\_\_\_ LODGED    MAIL
\_\_\_\_\_ RECEIVED

JUL 16 2020

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

FILED
SUPREME COURT
STATE OF WASHINGTON
7/13/2020
BY SUSAN L. CARLSON
CLERK

# THE SUPREME COURT OF WASHINGTON

| | |
|---|---|
| CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON<br><br>IN<br><br>W.H., as guardian for her minor daughter, P.H.; W.H., individually; J.H., individually; B.M., as guardian for her minor daughter, S.A.; and B.M., individually,<br><br>Plaintiffs,<br><br>v.<br><br>OLYMPIA SCHOOL DISTRICT, a public corporation; JENNIFER PRIDDY, individually; FREDERICK DAVID STANLEY, individually; BARBARA GREER, individually; WILLIAM V. LAHMANN, individually; DOMINIC G. CVITANICH, individually,<br><br>Defendants. | **CERTIFICATE OF FINALITY**<br><br>Supreme Court No. 97630-9<br><br>United States District Court - Western District No. C16-5273 BHS |

**THE STATE OF WASHINGTON TO:**   United States District Court – Western District.

THIS IS TO CERTIFY that the Supreme Court of the State of Washington addressed the questions certified by the United States District Court for the Western District in the opinion filed in this case on June 18, 2020. The opinion became final on July 8, 2020. A true copy of the opinion is attached.

Page 2
No. 97630-9
CERTIFICATE OF FINALITY



IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of this Court at Olympia, Washington on July 13, 2020.

*Susan L. Carlson*

SUSAN L. CARLSON
Clerk of the Supreme Court
State of Washington

cc: Hon. Benjamin Settle, Judge
    Hon. William M. McCool, Clerk
    Gerald John Moberg
    Michael Early McFarland Jr.
    Kenneth Wendell Masters
    Shelby R. Frost Lemmel
    Darrell L. Cochran
    Kevin Michael Hastings
    Christopher Eric Love
    Reporter of Decisions

**FILE**
IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JUNE 18, 2020

*[signature]*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JUNE 18, 2020

*[signature]*
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON<br><br>IN<br><br>W.H., as guardian for her minor daughter, P.H.; W.H., individually; J.H., individually; B.M., as guardian for her minor daughter, S.A.; and B.M., individually,<br><br>Plaintiffs,<br>v.<br><br>OLYMPIA SCHOOL DISTRICT, a public corporation; JENNIFER PRIDDY, individually; FREDERICK DAVID STANLEY, individually; BARBARA GREER, individually; WILLIAM V. LAHMANN, individually; DOMINIC G. CVITANICH, individually,<br><br>Defendants. | No. 97630-9<br><br>En Banc<br><br>Filed June 18, 2020 |

WIGGINS, J.P.T.*—The United States District Court for the Western District of Washington certified two questions to this court in connection with the meaning of the

---

* Justice Charles Wiggins is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

*W.H. et al. v. Olympia Sch. Dist. et al.*, No. 97630-9

Washington Law Against Discrimination (WLAD), chapter 49.60 RCW. First, the district court asked, "May a school district be subject to strict liability for discrimination by its employees in violation of the WLAD?" Order Granting Defs.' Mot. To Certify Issues to Wash. State Supreme Ct. & To Stay Proceedings, *W.H. v. Olympia Sch. Dist.*, No. C16-5273 BHS (Certification Order), at 8. Second, it asked, "If a school district may be strictly liable for its employees' discrimination under the WLAD, does 'discrimination' for the purposes of this cause of action encompass intentional sexual misconduct[,] including physical abuse and assault?" *Id.* at 10.

We answer *yes* to both questions. First, we hold that a school district may be subject to strict liability for discrimination in places of public accommodation by its employees in violation of the WLAD. Second, we hold that under the WLAD, discrimination can encompass intentional sexual misconduct, including physical abuse and assault.

## FACTS AND PROCEDURAL HISTORY

In August 2005, the Olympia School District (District) hired Gary Shafer as a school bus driver. It is undisputed that Shafer, during his employment, abused passengers on school buses, including P.H. and S.A., the minor plaintiffs in this case.

In 2016, the plaintiffs sued the District in federal court, alongside several codefendants. They claimed both state and federal causes of action. The defendants moved for summary judgment in June 2017, which was granted in part and denied in part. The court denied the defendants' motion to modify. The United States Court of Appeals for the Ninth Circuit affirmed in part, reversed in part, and remanded to district court. *W.H. v. Olympia Sch. Dist.*, 738 F. App'x 565, 567 (9th Cir. 2018).

2

*W.H. et al. v. Olympia Sch. Dist. et al.*, No. 97630-9

At the end of January 2019, we decided *Floeting v. Group Health Cooperative*, a case relevant today. 192 Wn.2d 848, 434 P.3d 39 (2019). In response to our decision in that case, the plaintiffs successfully moved to amend their complaint to include a claim under the WLAD. The amended complaint alleges that the minor plaintiffs' treatment constituted sex discrimination in a place of public accommodation.

The defendants then moved to certify three questions regarding the WLAD claim to this court. The court granted the motion over the plaintiffs' objection, certifying the above two questions to this court. Certification Order at 1, 8, 10.

The federal court declined to certify the third proposed question, which asked, "Where *Floeting* seeks to prevent gender-based discrimination in places of public accommodation, does it apply here, where sexual abuse (as opposed to harassment) is not based on gender, but on Shafer's criminal depravity toward children of both genders?" Defs.' Mot. To Certify Issues to Wash. State Supreme Ct. & To Stay Proceedings, at 11. The district court decided that the third question was not "ripe for a legal determination" because "whether Plaintiffs can show gender was a substantial factor in the discrimination the minor Plaintiffs experienced remains a factual question at this point in the proceedings." Certification Order at 11.

## STANDARD OF REVIEW

We review certified questions de novo. *Broughton Lumber Co. v. BNSF Ry. Co.*, 174 Wn.2d 619, 624, 278 P.3d 173 (2012) (citing *Bradburn v. N. Cent. Reg'l Library Dist.*, 168 Wn.2d 789, 799, 231 P.3d 166 (2010)). We consider legal issues in certified questions not in the abstract but based on the record provided by the federal court. *Id.* We review questions of statutory interpretation de novo. *Dep't of Ecology v.*

*W.H. et al. v. Olympia Sch. Dist. et al.*, No. 97630-9

*Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). We construe the WLAD "liberally for the accomplishment of the purposes thereof." RCW 49.60.020.

## ANALYSIS

The provision of the WLAD at issue here, RCW 49.60.215, was first enacted in 1957. But the WLAD was not the first law prohibiting discrimination in our state. Our legislature has long taken seriously the problem of discrimination in places of public accommodation. In March of 1890—mere months after Washington became a state— the legislature passed a law criminalizing discrimination on the basis of race or national origin in places of public accommodation. LAWS OF 1889-1890, ch. 16, §§ 1-2, at 524. This was later codified into the Remington & Ballinger's Code in 1909; it is now RCW 9.91.010. The first private right of action emerged in 1921, with our decision in *Anderson v. Pantages Theatre Co.*, 114 Wash. 24, 28, 194 P. 813 (1921). There, we read a private cause of action into the criminal statute. *Id.*

Modern legislation against discrimination began in 1949. In that year, the legislature passed the Law Against Discrimination in Employment, which protected individuals against employment discrimination on the basis of race, creed, color, or national origin. LAWS OF 1949, ch. 183, pmbl., § 1. This created the right for individuals to bring complaints before the Washington State Board Against Discrimination in Employment, also established by the act. *Id.* §§ 4, 8.

In 1957, the legislature enacted the WLAD. LAWS OF 1957, ch. 37. Once more protecting against discrimination on the basis of "race, creed, color, or national origin," the WLAD prohibited discrimination in places of public accommodation. *Id.* §§ 1, 3. This section—now RCW 49.60.215—makes it "an unfair practice for any person or

4

*W.H. et al. v. Olympia Sch. Dist. et al.*, No. 97630-9

[the person's] agent or employee to commit" a discriminatory act "in any place of public . . . accommodation." *Id.* § 14.

In 1973, the legislature added age, marital status, and sex to the general categories protected. LAWS OF 1973, ch. 141, § 1. These amendments also expressly created a private right of action for violations of the WLAD, codified in RCW 49.60.030(2). *Id.* § 3. In 1985, the legislature added "sex" to RCW 49.60.215. LAWS OF 1985, ch. 203, § 1.

This court has of course been far from silent as the WLAD developed. Two cases are of particular note today. In *Fell v. Spokane Transit Authority*, 128 Wn.2d 618, 637, 911 P.2d 1319 (1996), we held that to make a prima facie public accommodations claim under RCW 49.60.215, the plaintiff must show that

> (1) the plaintiff is a member of a protected class, (2) the defendant's establishment is a place of public accommodation, (3) the defendant discriminated against the plaintiff when it did not treat the plaintiff in a manner comparable to the treatment it provides to persons outside that class, and (4) the plaintiff's protected status was a substantial factor that caused the discrimination.

*Floeting*, 192 Wn.2d at 853 (citing *Fell*, 128 Wn.2d at 637).

Most recently, we decided *Floeting*, 192 Wn.2d 848. In *Floeting,* we held that employers are strictly liable for the actions of their employees under RCW 49.60.215. *Id.* at 861. In resolving this question, we analyzed the plain language of the WLAD, recognizing that the "WLAD makes it unlawful for 'any person or the person's agent or employee to commit an act' of, among other things, discrimination in a place of public accommodation." *Id.* at 856 (quoting RCW 49.60.215). Therefore, we held that "[t]his provision imposes direct liability on employers for the discriminatory conduct of

5

*W.H. et al. v. Olympia Sch. Dist. et al.*, No. 97630-9

their agents and employees." *Id.* We added that "RCW 49.60.215 is not a negligence statute where foreseeability matters," but that the WLAD instead "imposes direct liability for discriminatory acts, regardless of the culpability of the actor." *Id.* We clarified that this means that the WLAD "imposes strict liability to the extent it does not allow an employer to escape liability by asserting a lack of fault." *Id.* at 859. We thus concluded, "RCW 49.60.215 imposes strict liability on employers for the actions of their employees." *Id.* at 861.

> I. In a WLAD public accommodations claim, a school district is subject to strict liability for discrimination by its employees

The district court has asked, "May a school district be subject to strict liability for discrimination by its employees in violation of the WLAD?" Certification Order at 8. We hold that the answer to this question is *yes*: school districts are subject to strict liability for discrimination by their employees in violation of the WLAD in places of public accommodation under RCW 49.60.215.

> A. A school district is subject to strict liability for the discriminatory acts of its employees in places of public accommodation

*Floeting*, as noted above, directly answered whether employers were strictly liable for the actions of their employees under RCW 49.60.215 of the WLAD with a resounding *yes*. *Floeting* expressly held that "RCW 49.60.215 imposes strict liability on employers for the actions of their employees." 192 Wn.2d at 861.

Thus, while in the past the issues in this case were open and debatable, *Floeting* has resolved them. *See id.* Prior decisions by this court bind us via stare decisis. *State v. Otton*, 185 Wn.2d 673, 678, 374 P.3d 1108 (2016). "'Stare decisis is a doctrine developed by courts to accomplish the requisite element of stability in court-

*W.H. et al. v. Olympia Sch. Dist. et al.*, No. 97630-9

made law, but is not an absolute impediment to change.'" *Id.* (quoting *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970)).

There are two ways to overcome stare decisis. First, a party may show that a prior decision was incorrect and harmful. *Id.* (citing *Stranger Creek*, 77 Wn.2d at 653). Alternatively, "[t]here are also '"relatively rare" occasions when a court should eschew prior precedent in deference to intervening authority' where 'the legal underpinnings of our precedent have changed or disappeared altogether.'" *Id.* (internal quotation marks omitted) (quoting *W.G. Clark Constr. Co. v. Pac. Nw. Reg'l Council of Carpenters*, 180 Wn.2d 54, 66, 322 P.3d 1207 (2014)).

Here, the District does not argue that *Floeting* was incorrect and harmful or that the legal underpinnings of the decision have changed or disappeared. *See* Wash. Supreme Court oral argument, *W.H. v. Olympia Sch. Dist.*, No. 97630-9 (Mar. 12, 2020), at 28 min., 8 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org/watch/?eventID=200031078 (expressly declining to contest *Floeting*). We have no reason to overturn *Floeting*, and it instead binds us via stare decisis.

Rather than seeking to overturn *Floeting*, the District instead disputes whether strict liability applies to school districts. But there is no reason to refrain from applying *Floeting* to school districts. The relevant statutory language shows why *Floeting* applies to school districts. RCW 49.60.215 states, in relevant part, that

> [i]t shall be an unfair practice for any person or the person's agent or employee to commit an act which directly or indirectly results in any . . . discrimination . . . in any place of public . . . accommodation . . . .

RCW 49.60.040(19) defines "person" for the purposes of the WLAD as

7

> one or more individuals, partnerships, associations, organizations, corporations, cooperatives, legal representatives, trustees and receivers, or any group of persons; it includes any owner, lessee, proprietor, manager, agent, or employee, whether one or more natural persons; and further includes any political or civil subdivisions of the state and any agency or instrumentality of the state or of *any political or civil subdivision* thereof.

(Emphasis added.)

Finally, RCW 28A.315.005(2) states that "[l]ocal school districts are political subdivisions of the state."

The chain of logic is clear. Public accommodations claims can be brought against "any person." RCW 49.60.215. Any "person" includes "political . . . subdivisions" of the state. RCW 49.60.040(19). School districts are political subdivisions of the state. RCW 28A.315.005(2). Therefore, WLAD public accommodations claims apply to school districts. As all employers subject to WLAD public accommodations claims are strictly liable for the actions of their employees, *Floeting*, 192 Wn.2d at 856-59, it follows that school districts are strictly liable for the actions of their employees in the context of a public accommodations claim.

        B.    The District's arguments to the contrary do not persuade

The District asserts that the answer to question 1 must be *no*. It argues that "school districts may not be strictly liable, but are subject to liability only for their acts and omissions." Defs.' Br. on Certified Questions at 9 (Defs.' Br.).[1] To support this conclusion, the District makes three arguments: that precedent prevents school districts from being held directly or strictly liable for sexual abuse by their employees,

---

[1] The District makes several other arguments that purport to answer this question in the negative, but they deal with matters not directly at issue in this case. *See* Part III, *infra*.

that RCW 4.08.120 controls over anything in the WLAD, and that sovereign immunity prevents the court from treating a WLAD claim against school districts as a strict liability claim. These arguments cannot overcome the stare decisis of *Floeting*.

First, the precedents the District cites are inapplicable. As the plaintiffs point out, "it is unremarkable that [the cases cited by the District] applied only [negligence] tort principles of liability to such conduct, as *not a single one of them* addressed a WLAD public accommodation claim." Pls.' Reply Br. on Certified Questions (Pls.' Reply Br.) at 19. The plaintiffs are correct: none of the many cases cited by the District deal with the WLAD in any shape or form.[2] The District nearly admits as much, noting that "*Floeting* does not address [some of] these cases,[3] likely because [they] are not WLAD cases, [and] so do not speak to the meaning of RCW 49.60.215." Defs.' Br. at 23. This is correct: cases dealing with other causes of action do not limit or alter the nature of public accommodation suits brought under the WLAD. There is thus no need to determine whether such decisions were incorrect and harmful because they provide

---

[2] These cases deal with claims against school districts generally: *Anderson v. Soap Lake Sch. Dist.*, 191 Wn.2d 343, 352, 423 P.3d 197 (2018) (suit brought under negligent hiring and retention, negligent training and supervision, negligent protection of a student, vicarious liability, and breach of contract); *N.L. v. Bethel Sch. Dist.*, 186 Wn.2d 422, 426, 378 P.3d 162 (2016) (negligence claim); *Christensen v. Royal Sch. Dist. No. 160*, 156 Wn.2d 62, 64, 124 P.3d 283 (2005) (negligent supervision and hiring claims); *McLeod v. Grant County. Sch. Dist. No. 128*, 42 Wn.2d 316, 319, 255 P.2d 360 (1953) (negligence claim); *Briscoe v. Sch. Dist. No 123*, 32 Wn.2d 353, 361, 201 P.2d 697 (1949) (discussing negligence claims). Not one mentions the WLAD.

[3] These cases deal with sexual assault outside the context of schools: *C.J.C. v. Corp. of Catholic Bishop of Yakima*, 138 Wn.2d 699, 704, 985 P.2d 262 (1999) (negligence claims); *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 43, 929 P.2d 420 (1997) (tort claims); *Smith v. Sacred Heart Med. Ctr.*, 144 Wn. App. 537, 541, 184 P.3d 646 (2008) (negligent supervision and vicarious liability); *Thompson v. Everett Clinic*, 71 Wn. App. 548, 550, 860 P.2d 1054 (1993) (claims for respondeat superior/vicarious liability for underlying tortious acts of employee). Once more, none of these cases involve WLAD claims.

9

no controlling precedent in the WLAD context. *See id.* at 25-26 (arguing that such analysis is necessary). Controlling precedent is instead provided by *Floeting*.

Second, the statute the District relies on, RCW 4.08.120, does *not* control over anything in the WLAD and does *not* make non-WLAD tort suits the only means of recovery against schools and other public corporations. *See* Defs.' Br. at 9-10, 13 (making this argument). Instead, RCW 4.08.120 merely provides *one* means of bringing an action against public corporations. RCW 4.08.120 reads:

> An action may be maintained against a county or other of the public corporations mentioned or described in RCW 4.08.110, [which includes school districts,] either upon a contract made by such county, or other public corporation in its corporate character and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation.

This language is not exclusive. As the plaintiffs point out, the District essentially "urges the Court to read into the statute a term that does not exist—'only'—" even though "the law does not permit adding terms to the statute." Pls.' Reply Br. at 16 (citing *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003) ("[A] court must not add words where the legislature has chosen not to include them.")). Further, the District can point to no limiting principle in *Floeting* that prevents that decision from applying here.

The District's argument that RCW 4.08.120 waived the common law rule of sovereign immunity possessed by school districts *only* for "suits in contract or arising from their acts or omissions," and "did not subject school districts to all suits" is equally unconvincing. Resp. to Amicus Curiae Brs. at 9 (citing *Briscoe v. Sch. Dist. No. 123*, 32 Wn.2d 353, 361, 201 P.2d 697 (1949)). Again, RCW 4.08.120 does not purport to

be exclusive. Further, this argument ignores the broad waiver of sovereign immunity carried out by the legislature in the 1960s. See LAWS OF 1961, ch. 136, § 1; LAWS OF 1967, ch. 164, § 1; see also Blair v. Wash. State Univ., 108 Wn.2d 558, 576, 740 P.2d 1379 (1987) (showing this waiver of sovereign immunity permits WLAD actions). This applies directly to school districts. RCW 4.96.010 (rendering "[a]ll local governmental entities . . . liable for damages arising out of their tortious conduct," including "municipal corporation[s] as defined in RCW 39.50.010"); RCW 39.50.010 (including school district in its definition of "municipal corporation"). Further, to whatever extent sovereign immunity may have protected school districts from discrimination lawsuits prior to the WLAD, the WLAD clearly abrogated that sovereign immunity when it created a private cause of action, permitting suit in court, for discrimination in places of public accommodation and included public educational facilities in its definition of places of public accommodation. RCW 49.60.030(2) (creating a private cause of action for WLAD violations), .040(2) (defining "any public . . . educational institution" as a place of public accommodation), .215 (public accommodations claims apply to "any person"), .040(19) ("person" includes "political . . . subdivisions" of the state); RCW 28A.315.005(2) (school districts are political subdivisions of the state).[4]

---

[4] Curiously, Blair also suggests, in dicta, that the WLAD itself does not waive sovereign immunity for school districts or other public corporations, relying only on the broad waivers for the 1960s to permit such actions. 108 Wn.2d at 576. There, we noted, "The Law Against Discrimination enacted in 1949 did not specifically waive the State's sovereign immunity to suit in court, but instead established a state agency to process discrimination claims." Id. (citing LAWS OF 1949, ch. 183). But this discussion appeared to ignore the private cause of action created by RCW 49.60.030(2).

11

> II. "Discrimination" for the purposes of a WLAD public accommodations cause of action encompasses intentional sexual misconduct

The district court's second certified question asks, "If a school district may be strictly liable for its employees' discrimination under the WLAD, does 'discrimination' for the purposes of this cause of action encompass intentional sexual misconduct[,] including physical abuse and assault?" Certification Order at 10.

*Floeting* has essentially answered this question as well. We held in *Floeting* that "[s]exual harassment is a form of sex discrimination." 192 Wn.2d at 853; *see also id.* at 862-63 (Madsen, J., dissenting) (agreeing that "sexual harassment . . . . is a form of sex discrimination" (citing *Glasgow v. Ga.-Pac. Corp.*, 103 Wn.2d 401, 405, 693 P.2d 708 (1985))). Because sexual harassment is a form of sex discrimination, so, too, is "intentional sexual misconduct[,] including physical abuse and assault." Certification Order at 10. As the plaintiffs rightly point out, "sexual harassment is, by definition, intentional sexual misconduct." Pls.' Opening Br. at 17. Having held that one form of intentional sexual misconduct constitutes sex discrimination, it logically follows that other forms of intentional sexual discrimination, including physical abuse and assault, also constitute sex discrimination. Thus the answer to this question is *yes*.

Other courts have also concluded that sexual assault and sexual abuse can constitute sex discrimination. The Ninth Circuit has noted that

> [r]ape is unquestionably among the most severe forms of sexual harassment. . . . It imports a profoundly serious level of abuse . . . . Being raped is, at minimum, an act of discrimination based on sex.

12

*W.H. et al. v. Olympia Sch. Dist. et al.*, No. 97630-9

*Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 967-68 (9th Cir. 2002) (citing *Brock v. United States*, 64 F.3d 1421, 1423 (9th Cir. 1995)). Our Court of Appeals has agreed with this conclusion, favorably citing *Little* for the same proposition. *S.S. v. Alexander*, 143 Wn. App. 75, 101, 177 P.3d 724 (2008).

Rather than contest this, the District has conceded that the answer to this question is *yes*, insofar as the other relevant factors of a WLAD public accommodation claim are met. Defs.' Br. at 28; *see also* Wash. Supreme Court oral argument, *supra*, at 16 min., 46 sec. (also conceding this point). But the District protests that such a claim cannot be brought *here* because, it asserts, "Shafer sexually assaulted boys *and* girls." *Id.* Thus, the District argues that "this is not a WLAD case" because "the class at issue[ ] is not sex, but age." *Id.* But this does not answer the question; this question does not ask whether the plaintiffs were members of a protected class or whether this is "a WLAD case" but, instead, whether "'discrimination' for the purposes of this cause of action encompass[es] intentional sexual misconduct[,] including physical abuse and assault." Certification Order at 10. The District has answered *yes* to this question. And so do we.

III.   We decline to consider the District's remaining arguments

The District's remaining arguments, which purport to resolve the first question, in fact go beyond the scope of the certified questions. We decline to reach them.

First, the District essentially invites us to consider the question that the federal court chose *not* to certify, which was "whether a plaintiff can prove discrimination was based on gender when the perpetrator directed harassing conduct toward victims of

13

*W.H. et al. v. Olympia Sch. Dist. et al.*, No. 97630-9

both genders." *Id.* at 11. As the federal court noted, this remains a factual issue, one we cannot resolve here. *Id.* We decline the District's invitation to do so.

Second, the District argues, "Plaintiffs' claims fail the first and second *Fell* inquiries." Defs.' Br. at 5. This argument is inapplicable to the questions posed by the district court because neither question asks whether the plaintiffs can satisfy the first two *Fell* factors. *Id.* at 4. We decline to reach these issues.

## CONCLUSION

We answer both certified questions in the affirmative. First, a school district is subject to strict liability lawsuits for discrimination in places of public accommodation by its employees in violation of the WLAD. Second, intentional sexual misconduct can amount to discrimination under the WLAD.

14

*W.H. et al. v. Olympia Sch. Dist. et al.*, No. 97630-9

_____
Wiggins, J.P.T.

WE CONCUR.

| | |
|---|---|
| _____ <br> Stephens, C.J. | _____ <br> González, J. |
| _____ <br> Johnson, J. | _____ <br> Gordon McCloud, J. |
| _____ <br> Madsen, J. | _____ <br> Yu, J. |
| _____ <br> Owens, J. | _____ <br> Montoya-Lewis, J. |

15

NEOPOST         FIRST-CLASS MAIL
07/14/2020
US POSTAGE $001.60⁰

ZIP 98504
041M11455231

Washington State Supreme Court

Temple of Justice
415 12th Avenue SW
P.O. Box 40929
Olympia, WA 98504-0929

FILED ___ LODGED ___
___ RECEIVED
JUL 27 2020
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                                    DEPUTY

Received From
SEATTLE
JUL 27 2020

Hon. William M. McCool, Clerk
United States District Court, Western District
of Washington
700 Stewart Street, Suite 2310
Seattle, WA 98101

FILED
LODGED
RECEIVED
JUL 16 2020
AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY