UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| W.H., et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>OLYMPIA SCHOOL DISTRICT, et al.,<br><br>    Defendants. | CASE NO. C16-5273 BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on the motion for partial summary judgment of Plaintiffs W.H., both for herself and as guardian for her minor daughter P.H.; J.H. individually; and B.M., both for herself and as guardian for her minor daughter S.A. (collectively "Plaintiffs"). Dkt. 95. The Court has considered the briefings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

As the parties are familiar with the history of this case, the Court provides the following relevant overview. On April 8, 2016, Plaintiffs commenced this action against Defendants Olympia School District, Jennifer Priddy, Frederick Stanley, Barbara Greer,

ORDER - 1

William Lahmann, and Dominic Cvitanich (collectively "Defendants"). Dkt. 1. W.H. and J.H. are the mother and father of minor Plaintiff P.H. Dkt. 75, ¶¶ 13–15. B.M. is the mother of minor Plaintiff S.A. *Id.* ¶¶ 16, 17.

Plaintiffs bring claims against Defendants arising out the sexual harassment and abuse by Gary Shafer—a former District bus driver. Over the course of his employment, Shafer confessed to having sexually harassed and abused between twenty-five or thirty-five (and possibly as many as seventy-five) of the District's youngest bus passengers. *See* Dkt. 96, Ex. 3, at 55–58. In their initial complaint, Plaintiffs brought 42 U.S.C. § 1983 claims for violations of constitutional rights against all Defendants, for violation of Title IX, 20 U.S.C. § 1681(a), against the District, and state law claims of negligence, negligent infliction of emotional distress, outrage, and loss of consortium against all Defendants. Dkt. 1 at 30–33.

Plaintiffs sought leave to amend their complaint to clarify their § 1983 claims against the individual Defendants and to add a claim under the Washington Law Against Discrimination ("WLAD"), RCW § 49.60, *et seq.*, against the District. Dkt. 65. The Court granted the motion, Dkt. 74, and Defendants moved the Court to certify questions to the Washington State Supreme Court regarding the scope of the District's liability for an employee's intentional conduct under WLAD, Dkt. 76. The Court granted the motion and certified two questions: (1) May a school district be subject to strict liability for discrimination by its employees in violation of the WLAD? and (2) If a school district may be strictly liable for its employees' discrimination under the WLAD, does

"discrimination" for the purposes of this cause of action encompass intentional sexual misconduct including physical abuse and assault? Dkts. 80, 81.

The State Supreme Court answered both questions in the affirmative. Dkt. 85; *W.H. v. Olympia Sch. Dist.*, 195 Wn.2d 779, 783 (2020). It reaffirmed that all employers subject to WLAD public accommodations claims are strictly liable for the actions of their employees and articulated that this principle includes school districts. *W.H.*, 195 Wn.2d at 789 (citing *Floeting v. Grp. Health Coop.*, 192 Wn.2d 848, 856–59 (2019)). Moreover, the State Supreme Court held that discrimination under WLAD encompasses intentional sexual misconduct. *Id.* at 792–94.

In response to the State Supreme Court's opinion, Plaintiffs now move for summary judgment on their WLAD claim. Dkt. 95. They ask the Court to enter an order granting summary judgment on each prima facie element of the claim, leaving the issues of proximate cause and damages for trial. *Id.* In response, the District argues that there are questions of fact as to whether the minor Plaintiffs were abused by Shafer and as to whether the gender of Plaintiffs was a substantial factor for the abuse. Dkt 98. The District additionally argues that a school bus is not a place of public accommodation. *Id.*

## II.   FACTUAL BACKGROUND

In August 2005, the District hired Gary Shafer, a 26-year-old man, as a bus driver. Dkt. 34-1 at 2. In 2008, Shafer started doing "ride-alongs," a practice where a District driver or employee spends unpaid time as an extra passenger on other drivers' routes. *See* Dkt. 34-2 at 16–17, 49–50, 54–56, 65. Shafer used ride-alongs as an opportunity to target, groom, and molest student passengers.

1          Shafer was arrested in 2011 for two counts of child molestation in the first degree.
2   Dkt. 96, Exs. 1, 2. After Shafer was taken into custody, he was referred to Sue Batson, a
3   Washington State registered therapist, for a psychosexual evaluation. *Id.*, Ex. 3. During
4   the course of the evaluation, Shafer listed the first names of minor Plaintiffs S.A. and
5   P.H. among his victims and indicated that they had been abused during the 2008–2009
6   school year. *Id.*, Ex. 3, at 49, 54, 57. Following Shafer's arrest, in May 2011, the
7   detective investigating Shafer's case met with District officials to request help in
8   identifying and contacting Shafer's named victims. Dkt. 34-6 at 11, 43–45. District
9   officials identified S.A. and P.H. as Shafer's victims. *Id.* at 45–46, 55–56. Shafer has also
10  testified in civil matters following his arrest. *See* Dkt. 96, Ex. 4. During his testimony,
11  Shafer again admitted that he sexually abused S.A. and P.H. during his employment. *Id.*,
12  Ex. 4, at 440:19–21 ("Did you abuse a child named [S] while you were a district
13  employee?" "Yes."); 443:21–24 ("Did you abuse a girl named [P] during the time that
14  you were a bus driver with the Olympia School District?" "Yes.").
15         P.H.'s abuse occurred when Shafer was riding along on Dale Thompson's route.
16  *Id.*, Ex. 4, at 443:21–444:23. Thompson has testified in other trials related to Shafer's
17  sexual abuse while a District employee that he did not see Shafer involved in any type of
18  inappropriate contact with a student. Dkt. 28 at 37. S.A.'s abuse occurred while she was
19  waiting on John Bakewell's bus for a transfer to another route. Dkt. 96, Ex. 4, at 440:22–
20  442:13. Bakewell, like Thompson, has testified in other trials related to Shafer's abuse
21  that he never noticed anything that was out of the ordinary or unusual. Dkt. 28 at 200.
22  Shafer has testified, however, that he was careful in his abuse so that he could not be seen

by the bus driver. *See, e.g.*, Dkt. 96, Ex. 4, at 442:25–443:3, 444:23–445:3; Dkt. 28 at 178–179.

In her deposition in 2017, P.H. testified that she did not recall interacting with Shafer at all and that she did not have any memory of any of her kindergarten year. Dkt. 37-6, at 29:6–21, 39:6–16. She further testified that she learned through her parents that Shafer abused her. *Id.* at 33:8–14. S.A. was also deposed in 2017, and she testified about Shafer's abuse in detail, though she testified that she did not know Shafer's name at the time of the abuse. *See* Dkt. 28 at 296–311.

Jon R. Conte, Ph.D., evaluated both P.H. and S.A. in 2017.[1] Dkt. 97, ¶ 4. During Dr. Conte's evaluation of P.H.'s evaluation, P.H. stated that she felt that Shafer's conduct and behavior towards her on the school bus were "creepy." *Id.* ¶ 5. She further stated that his actions scared her and that she tried to ignore him by looking out the window. *Id.* P.H. also told Dr. Conte that when she thought about Shafer's abuse, she felt "panic, disgust, scared, ashamed, and really anxious." *Id.* ¶ 6. During her evaluation, S.A. told Dr. Conte that Shafer's abuse made her feel "disgusted, sad, and angry." *Id.* ¶ 7. S.A. also stated that she often thought of the abuse and felt it was one of the "bad things that have happened in her life." *Id.*

Plaintiffs now move for partial summary judgment on their WLAD claim, arguing that the undisputed material facts establish that P.H. and S.A. suffered prohibited discrimination in a place of public accommodation for which the District is strictly liable.

---

[1] The District has separately objected to Dr. Conte's declaration, Dkt. 100, which is addressed below.

## III.  DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The

nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.    Merits**

In response to the Court's certified questions in this case, the State Supreme Court held that "school districts are subject to strict liability for discrimination by their employees in violation of the WLAD in places of public accommodation under RCW 49.60.215." *W.H.*, 195 Wn.2d at 787. To make a prima facie WLAD public accommodation claim, a plaintiff must show that:

> (1) the plaintiff is a member of a protected class, (2) the defendant's establishment is a place of public accommodation, (3) the defendant discriminated against the plaintiff when it did not treat the plaintiff in a manner comparable to the treatment it provides to persons outside that class, and (4) the plaintiff's protected status was a substantial factor that caused the discrimination.

*Floeting*, 192 Wn.2d at 853 (internal citation omitted).

The first three elements are mixed questions of fact and law, and the last element is strictly a question of fact. *Fell v. Spokane Transit Auth.*, 128 Wn.2d 618, 637 (1996). "In a case where the facts are either undisputed or where reasonable minds would not differ about them, a court could decide the presence or absence of the first three elements as a matter of law." *Id.*

### 1. Members of a Protected Class

RCW 49.60.215 prohibits discrimination in a place of public accommodation on the basis of sex. WLAD defines sex as gender, and therefore gender is a protected class under the statute. RCW 49.60.040(26). Plaintiffs assert that P.H. and S.A. were members of a protected class as girls, and the District does not dispute that. *See* Dkt. 103 at 1–2. As a matter of law, the Court concludes that Plaintiffs were member of a protected class.

### 2. Place of Public Accommodation

Plaintiffs next argue that, as a matter of law, a public school bus is a place of public accommodation. Dkt. 95 at 8–17. While it is well established that both public and private schools are places of public accommodation, it is unsettled whether a school bus in included in this definition as well. RCW 49.60.040(2) (defining a place of public accommodation as including, but not limited to, "any public library or educational institution, or schools of special instruction, or nursery schools"); WAC 162-28-030(1) ("All public and private schools and other educational facilities in the state of Washington, except those operated or maintained by a bona fide religious or sectarian institution, are 'places of public resort, accommodation, assemblage or amusement' for purposes of [WLAD]."). "In the absence of a controlling decision from a state supreme court, a federal court must interpret state law as it believes the state's highest court would." *Dias v. Elique*, 436 F.3d 1125, 1129 (9th Cir. 2006).

To support their argument that a public school bus is a public place of accommodation under WLAD, Plaintiffs rely in part on the Washington State Constitution's public school mandate. The State Constitution establishes the state's

"paramount duty . . . to make ample provision for the education of all children residing within its borders, without distinction or preference on account of race, color, caste, or sex." Wash. Const. art. IX, § 1. To carry out that paramount duty, the Washington Constitution mandates the legislature to "provide for a general and uniform system of public schools." *Id.* art. IX., § 2. These two sections together require the establishment of public schools and the provision of a "basic education." *See Seattle Sch. Dist. No. 1 of King Cnty. v. State*, 90 Wn.2d 476, 518–20 (1978).

The state legislature, in acting upon this constitutional mandate, has defined a "program of basic education." RCW 28A.150.200(1). Importantly, "transportation and transportation services to and from school for eligible students" are included within this definition. *Id.* at (2)(d). Plaintiffs thus argue that "Washington law expressly establishes that transportation to and from school is part of the accessible basic education that school districts hold open to the public in compliance with Article IX, section 1's mandates." Dkt. 95 at 11. As such, Plaintiffs assert that when a school bus conveys children to and from school, it serves the public. *Id.*

Plaintiffs also rely upon WLAD's non-exclusive list of places of public accommodation to support their argument. Indeed, WLAD defines a place of public resort, accommodation, assemblage, or amusement to include any place "for public conveyance or transportation on land, water, or in the air, including the stations and terminals thereof and the garaging of vehicles . . . ." RCW 49.60.040(2). The Washington Supreme Court has held that this definition encompasses public transportation but has

explained that WLAD extends to places and facilities, but not to services. *Fell*, 128 Wn.2d at 638.

Plaintiffs note as well that other places and facilities, which have been held to be public accommodations as a matter of law, are not open to every single member of the general public all of the time. Restaurants, parks and public resorts, movie theaters, weight control clinics, and barbershops have been held to be places of public accommodation. *Id.* at 638 n.24 (collecting cases). Such places, Plaintiffs argue, hold themselves out for business to all members of the general public, though they are only open to paying customers. Plaintiffs argue that, in this same vein, although public school buses serve a subset of the general public, this limitation makes school buses no less public than public schools, restaurants, or theatres.[2]

In sum, Plaintiffs argue that school buses are not limited to a distinctly private ridership and, rather, are open to the public as part of a child's basic education. Therefore, according to Plaintiffs, school buses are places of public accommodation serving a significant subset of the public consistent with WLAD's plain language and underlying purpose.

---

[2] Plaintiffs also rely on a Missouri case to support their argument that a place of public accommodation's restricted access does not render an accommodation private. *See* Dkt. 95 at 13–15 (citing and discussing *Doe ex rel Subia v. Kansas City, Missouri Sch. Dist.*, 372 S.W.3d 43 (Mo. Ct. App. 2012)). *Subia* considered whether an elementary school building was "public" within the meaning of Missouri's anti-discrimination statute. 372 S.W.3d at 49. The court held that the fact that access to public schools is restricted does not defeat the public nature of a school. *Id.* at 50. While not controlling on the Court, this lends support to Plaintiffs' arguments.

The District, on the other hand, argues that a public school bus is not a place of public accommodation because a school bus is not public or "open or available for all to use, share, or enjoy." Dkt. 98 at 20 (quoting *Public*, *Black's Law Dictionary* (9th ed. 2009)). It argues that because school buses must be used exclusively for children attending public school within a school district, a school bus is not necessarily open to the public as a place of public accommodation. In support of this argument, the District relies on an Iowa Supreme Court decision discussing the definition of "general public" under Iowa state law. *Good v Iowa Civil Right Comm'n*, 368 N.W.2d 151, 154 (1985). The Iowa Supreme Court cited a state attorney general opinion that stated: "school bus transportation provided by the school districts did not constitute a public accommodation because it was not offered to the general public, which includes all people." *Id.* at 154 n.2.

The District cites other federal and state case law reaching similar conclusions. *See* Dkt. 98 at 22 (collecting cases from, *inter alia*, New York state court, Eastern District of California, and Illinois state court). These cases hold that places or facilities open to the public at large are places of public accommodation and that those which are limited or restricted are not. *See, e.g.*, *Gifford v. McCarthy*, 23 N.Y.S.3d 422, 428 (2016) ("[T]he critical factor is that the facilities are made available to the public at large."). But the District does not address if this interpretation of public accommodation is consistent with how Washington state courts interpret WLAD's definition of places of public accommodation. The District argues that to hold that a school bus is a place of public

accommodation would be an "impermissible expansion" of WLAD but does not explain why.

In their reply, Plaintiffs assert that WLAD does not use the term "general public" and that the statute rather embraces a liberal and expansive definition of "public accommodation." Dkt. 103 at 6. Plaintiffs distinguish the various state statutes and case law cited by the District from WLAD, arguing that all of the District's cited statutes apply only to commercial business establishments serving the general public, *see id.* at 6–8, as opposed to WLAD's broader definition encompassing many differing "place[s] of public resort, accommodation, assemblage, or amusement," RCW 49.60.040(2). They urge the Court to reject any attempts to compartmentalize the public accommodation to defeat the public character of the specific portion in which discrimination occurred. *See Martin v. PGA Tour, Inc.*, 204 F.3d 994, 997 (9th Cir. 2000) (holding that a facility may not be compartmentalized to deprive a facility of its character as a public accommodation under the Americans with Disabilities Act).

The Court must interpret WLAD as it believes the Washington State Supreme Court would as a matter of first impression. *See Dias*, 436 F.3d at 1129. The Court's "primary duty in statutory interpretation is to ascertain and carry out the legislature's intent." *State v. Pratt*, 196 Wn.2d 849, 853 (2021) (citing *State v. Bigsby*, 189 Wn.2d 210, 216 (2017)). WLAD is to be construed liberally. RCW 49.60.020. The Court concludes that a public school bus is a place of public accommodation as a matter of law.

As circumscribed in the Washington State Constitution, the state must provide for "the education of *all* children." Wash Const. art. IX, § 1 (emphasis added). The

1 Washington legislature has defined the constitutionally mandated basic education to
2 include transportation to and from school. RCW 28A.150.200(2)(d). This mandate
3 requires schools to provide transportation, like buses, to all students. School buses are
4 restricted in that only children who are attending a district school may ride the bus, but
5 that does not mean that a school bus is not open to the public. Schools themselves are
6 restricted to certain age groups but are open to the public at large for children to attend.
7 Thus, school buses, as part of the state's basic education mandate, are open to the public
8 at large for children to utilize.

9       The Court does not find that the District's argument that a place must be open to
10 *everyone* to be a place of public accommodation is supported by the statutory text of
11 WLAD or its case law. The statute does not limit a place of public accommodation to
12 only those places that are open to the "general public." Rather, WLAD's definition of a
13 place of public accommodation encompasses schools, public transit, hotels, hospitals, and
14 movie theatres, among others. *See* RCW 49.60.040(2); *Fell*, 128 Wn.2d at 638 & n.24.
15 Public transportation, for example, is open for all to use but only those who have paid the
16 required fare may utilize the transportation service. This is like a public school bus
17 because a school bus is open for all to use but only those who attend the public school
18 may utilize its services. That a school bus has a restricted ridership does not strip away its
19 public nature.

20       As statutorily required and consistent with the state's basic education mandate,
21 transportation to and from school must be offered to the public. A public school bus, like
22

schools and like public transportation, is a place of public accommodation. This interpretation is consistent with WLAD's statutory definitions and liberal construction.

But even if a public school bus itself is not a place of public accommodation as a matter of law, WLAD declares that all persons have "the right to the full enjoyment of accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement." RCW 49.60.030(1)(b). Advantage is defined as "a benefit, profit, or gain of any kind." *Advantage*, *Webster's Third New Int'l Dictionary* 30 (2002); *see also Fraternal Ord. of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Ord. of Eagles*, 148 Wn.2d 224, 239 (allowing for a court to give plain and ordinary meaning to words in the absence of a statutory definition). A public school bus is at least an advantage of public schools because it benefits the students who attend public schools in transporting them to school.

Facility is defined as "something (as a hospital, machinery, plumbing) that is built, constructed, installed or established to perform some particular function or to serve or facilitate some particular end." *Facility*, *Webster's Third New Int'l Dictionary* 812–13 (2002). Public school buses are built to transport school attendees to and from schools, making them facilities of public schools. Thus, at the very least, a public school bus is a facility or advantage of public schools—a well-established place of public accommodation—bringing a public school bus within WLAD's statutory fold.

The District has failed to show that there are any genuine factual issues for trial and has failed to establish that there are "major differences" between a school bus and a public school. School buses are "other educational facilities." WAC 162-28-030(1). A

public school bus is a place of public accommodation as defined by WLAD, as a matter of law.

### 3. Discrimination

The third element of a WLAD claim requires Plaintiffs to establish that the District, through the acts of its employee Shafer, discriminated against S.A. and P.H. To constitute discrimination, the alleged conduct must be both objectively and subjectively discriminatory. *Floeting*, 192 Wn.2d at 858–59. Conduct is objectively discriminatory when it is "of a type, or to a degree, that a reasonable person who is a member of the plaintiff's protected class, under the same circumstances, would feel discriminated against[.]" *Id.* at 858 (quoting *Floeting v. Grp. Health Coop.*, 200 Wn. App. 758, 774 (2017)). Conduct is subjectively discriminatory when the plaintiff subjectively perceives a "distinction, restriction, or discrimination" in a way that she was afforded access to the public accommodation's service or when the conduct denies the plaintiff "full enjoyment" of the public accommodation. *Floeting*, 200 Wn. App. at 775. Sexual harassment is a form of sex discrimination, and because of that, "so, too, is intentional sexual misconduct, including physical abuse and assault." *W.H.*, 195 Wn.2d at 792 (citing, *inter alia*, *Floeting*, 192 Wn.2d at 853) (internal quotations omitted).

Plaintiffs argue that P.H. and S.A. suffered from both objective and subjective discrimination due to Shafer's sexual abuse of them. They assert that his conduct was objectively discriminatory and that they subjectively perceived his conduct as discriminatory because the abuse deprived them of the full enjoyment of their schools and school buses. Dkt. 95 at 17–18. Defendants strenuously dispute this assertion and

argue that there are questions of fact as to whether Shafer sexually abused P.H. and S.A. Dkt. 98 at 15–17.

As a preliminary matter, the District has filed separate objections to Dr. Conte's declaration. Dkt. 100. It argues that his declaration is not relevant to prove that Shafer sexually abused P.H. or S.A. The Court interprets the District's objections as a motion to strike Dr. Conte's declaration. As Plaintiffs highlight, the Local Rules require a party to include requests to strike in their responsive brief. W.D. Wash. LCR 7(g). The Court routinely declines to consider separate objections to declarations. *See, e.g.*, *Canal Indem. Co. v. Global Development, LLC*, No. 2-14-cv-00823-RSM, 2015 WL 347753, at *6 n.5 (W.D. Wash. Jan. 26, 2015); *In re Anderson*, 847 F. Supp. 2d 1263, 1266 n.1 (W.D. Wash. 2012). Plaintiffs additionally argue that, even if the Court considered the District's objections, they are not offering Dr. Conte's declaration to prove Shafer's abuse but as evidence of S.A and P.H.'s subjective perception of discrimination. Dkt. 103 at 4 n.1. The Court thus declines to consider the District's objections because it has failed to comport with Local Rule 7(g) and because the declaration is not being offered in the way in which the District objects.

Under the objective standard, the Court concludes that reasonable minds would not differ that P.H. and S.A. suffered discrimination because of Shafer's sexual abuse. Shafer admitted in his psychosexual evaluation in 2011 to abusing two girls with the same first names as P.H. and S.A. during the 2008–2009 school year. His testimony since that admission has been consistent, and he has testified under penalty of perjury that he abused a girl named P and a girl named S. The District speculates as to differing

motivations for Shafer to make such a confession, Dkt. 98 at 17 ("Shafer *may have had* a selfish reason for admitting that he molested children." (emphasis added)), but this speculation is insufficient to defeat a motion for summary judgment, *see Matsushita*, 475 U.S. at 586 (the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, the District's officials themselves used Shafer's 2011 admission to identify S.A. and P.H. *specifically* as Shafer's victims.

      The District seems to argue that because S.A. did not know Shafer's name (but still gave extensive testimony about his abuse that is consistent with Shafer's own account) and that because P.H. does not remember the abuse specifically, there are questions of fact as to whether the two minor Plaintiffs were abused. Dkt. 98 at 15–16. But the Court is not convinced that this evidence is more than a "metaphysical doubt" as to whether the abuse happened. The same can be said of the bus drivers Bakewell and Thompson's testimonies that they did not see Shafer acting inappropriately or doing anything unusual. That they did not see anything inappropriate or unusual is consistent with Shafer's testimony that he tried to avoid being seen abusing students during ride-alongs. The Court does not view this evidence to directly contradict Shafer's admission and testimony or the District officials' own identification of S.A. and P.H. as victims, or to create a dispute of fact.[3]

---

[3] The District's theory is ultimately unsupported by the record. "The district judge is not required to comb the record to find some reason to deny a motion for summary judgment." *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1417–18 (9th Cir. 1988). Based on the record

In considering the substantive evidentiary burden that Plaintiffs must meet at trial—i.e., a preponderance of the evidence—the Court concludes that reasonable minds would not differ as to whether Shafer committed intentional sexual misconduct toward S.A. and P.H. The evidence is that S.A. and P.H. objectively suffered discrimination.

Additionally, Plaintiffs have conclusively established that P.H. and S.A. subjectively perceived Shafer's conduct as discriminatory. While the Districted objected to Dr. Conte's declaration to prove that the minor Plaintiffs were abused by Shafer, it did not present evidence contradicting that P.H. or S.A.'s subjective perception of Shafer's abuse. P.H. told Dr. Conte that when she thought about Shafer's abuse, she felt "panic, disgust, scared, ashamed, and really anxious." Dkt. 97, ¶ 6. During her evaluation, S.A. told Dr. Conte that Shafer's abuse made her feel "disgusted, sad, and angry." *Id*. ¶ 7. This evidence is sufficient to establish P.H. and S.A.'s subjective perception. *See Floeting*, 200 Wn. App. at 780.

Therefore, the Court concludes that, as to this element, "the facts are either undisputed or [that] reasonable minds would not differ about them." *Fell*, 128 Wn.2d at 637. Shafer's conduct, for which the District is strictly liable, was both objectively and subjectively discriminatory.

**4.  Substantial Factor**

The final element of a WLAD claim is that a plaintiff's protected status was a substantial factor that caused the discrimination. However, "[t]he question of whether a

---

before the Court, it does not appear that Shafer was deposed in order to attempt to develop the District's theory.

ORDER - 18

1 | person's [protected characteristic] was a substantial factor in the alleged discrimination,
2 | like other matters of proximate causation, is a question of fact." *Fell*, 128 Wn.2d at 641–
3 | 42 (citing *Hartley v. State*, 103 Wn.2d 768, 777–81 (1985)). The substantial factor
4 | element of a WLAD claim reflects "the necessity for establishing proximate cause, and
5 | has nothing to do with the subjective intent of the defendant." *Id.* at 642 n.30.

6        Plaintiffs argue that there is no reasonable dispute that S.A. and P.H.'s gender was
7 | a significant motivating factor for Shafer's abuse. *See* Dkt. 95 at 18–22. Shafer has
8 | admitted that he targeted female District students due to his sexual attraction to girls, but,
9 | while compelling evidence, the Court may not determine whether P.H. and S.A.'s gender
10 | was a substantial factor in the discrimination at this juncture. The Washington State
11 | Supreme Court has explicitly held that the substantial factor element is a question of fact,
12 | and the Court may only decide the first three elements of a WLAD claim as a matter of
13 | law. *Fell*, 128 Wn.2d at 637. The Court makes no determination as to Plaintiffs'
14 | arguments that S.A. and P.H.'s gender was a substantial factor and may not resolve this
15 | factual issue. *Accord W.H.*, 195 Wn.2d at 794 (declining to address the District's
16 | substantial factor arguments because "[a]s the federal court noted, this remains a factual
17 | issue, one we cannot resolve here.").

**C.  Conclusion**

19        As a matter of law, Plaintiffs have established that S.A. and P.H. were members of
20 | a protected class, that a public school bus is a place of public accommodation under
21 | WLAD, and that S.A. and P.H. were subjected to discrimination. Whether S.A. and
22 | P.H.'s gender was a substantial factor in the discrimination, however, is ultimately a

question of proximate cause and a question of fact. To that extent, Plaintiffs' motion for partial summary judgment is granted as to the first three elements and denied as to the final, substantial factor element.

At trial, Plaintiffs will not be required to prove the first three elements of their WLAD claim, and the Court recommends that the parties reach a stipulation prior to trial as to how to present this information to the jury.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that Plaintiffs' motion for partial summary judgment, Dkt. 95, is **GRANTED in part** and **DENIED in part**.

Dated this 10th day of November, 2021.

BENJAMIN H. SETTLE
United States District Judge